**Neil M. BAIZER, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

**No. 98–70870.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2000

Decided March 1, 2000

Alice L. Ronk, Kenneth L. Greene, Tax Division, United States Department of Justice, Washington, D.C., for the respondent-appellee.

Frederick A. Romero, Los Angeles, California, for the petitioner-appellant.

Before: MAGILL,[1] HAWKINS and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

This appeal requires us to decide, *inter alia,* whether the Department of Treasury has the authority to impose tax penalties as a result of prohibited transactions with a qualified pension plan when the Department of Labor has entered into a consent judgment concerning the plan. We conclude that, under the circumstances presented in this case, the Department of Treasury possesses such authority and affirm the judgment of the Tax Court.

I

Neil Baizer was an officer and a director, and shareholder, in the Cohen & Baizer Accountancy Corporation ("the accounting firm"). On February 1, 1981 the accounting firm adopted the Cohen & Baizer Accountancy Corporation Defined

1. The Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Benefit Pension Plan and Associated Trust (the "Plan"). The Plan was a qualified plan and exempt trust under 26 U.S.C. §§ 401(a) & 501(a).

The Plan's management was conducted by a committee that consisted of both Baizer and Cohen. Baizer was a fiduciary to the Plan within the meaning of 26 U.S.C. § 4975(e)(3). As a fiduciary, Baizer was also a "disqualified person" with respect to the Plan as that term is used in 26 U.S.C. § 4975(e)(2).

The minimum funding standards of 26 U.S.C. § 412 required the accounting firm to contribute $186,200 to the Plan each year. No contribution of any kind was made for Plan year 1984. No cash contribution was made for Plan Year 1985; rather, notations of two fictitious notes from "H. Bogart" totaling the amount of the required contribution were recorded in the Plan's records. Baizer stipulated that, at least as far as this case is concerned, "H. Bogart" was a fictional person.

On May 31, 1988, the accounting firm transferred $273,558 of accounts receivable to the Plan in partial satisfaction of the accounting firm's outstanding funding obligation to the Plan. The Plan did not seek an exemption to allow accounts receivable to be contributed to the Plan. No evidence was offered to show that any of the accounts receivable were ever collected, nor were the accounts receivable ever replaced with cash.

Of all the pension plans in all the towns in all the world, both the Internal Revenue Service ("IRS") and the Department of Labor ("DOL") happened to audit this one. The IRS notified DOL—which was already pursuing a variety of remedies against the Plan pursuant to the Employment Retirement Income Security Act of 1974, Pub.L. No. 93–406, 88 Stat. 829 ("ERISA")—of its intent to disqualify the plan for failure to satisfy the exclusive benefit rule of 26 U.S.C. § 401(a). As a result of the DOL investigation, Baizer (individually and as trustee of the Plan) entered into a "Stipulation for Consent Judgment: Judgment" ("Consent Judgment") with the DOL in February 1993. The Consent Judgment stated that it was to act as a "final adjudication of all claims" made by the DOL against Baizer. Additionally, the Consent Judgment provided that the "obligations imposed by this Judgment are not binding on any government agency other than the [DOL]."

The IRS, after concluding its separate investigation, sent Baizer a notice of deficiency on August 18, 1994. In the notice, the Commissioner of Internal Revenue ("Commissioner") asserted penalties under 26 U.S.C. §§ 4975(a), (b) due to the determination that the transfer of the accounts receivable constituted a prohibited transaction. Other additions to tax were asserted as well, none of which are at issue in this case.

In the tax court, Baizer made a motion to dismiss, arguing that the court was barred from considering the issue of whether the transfer of the accounts receivable constituted a prohibited transaction within the meaning of § 4975 due to the Consent Judgment. Baizer argued that the court lacked jurisdiction because the DOL had made a previous determination that the transfer did not constitute a prohibited transaction. Alternatively, Baizer argued that the doctrine of res judicata barred the government from relitigating an issue already investigated by the DOL. The tax court rejected both of these arguments and upheld the Commissioner's notice of deficiency.

We review decisions of the tax court under the same standards as civil bench trials in the district court. *See Estate of Rapp v. Commissioner,* 140 F.3d 1211, 1214 (9th Cir.1998). Although a presumption exists that the tax court correctly applied the law, no special deference is given to the tax court's decisions. *See AMERCO, Inc. v. Commissioner,* 979 F.2d 162, 164 (9th Cir.1992). Therefore, we review tax court conclusions of law de novo, *see Harbor Bancorp & Subsidiaries v. Commissioner,* 115 F.3d 722, 727 (9th Cir. 1997), and questions of fact are for clear

error, *see Boyd Gaming Corp. v. Commissioner*, 177 F.3d 1096, 1098 (9th Cir.1999).

## II

The Internal Revenue Code imposes taxes on a disqualified person who participates in a prohibited transaction with a qualified plan. The applicable statute, 26 U.S.C. § 4975, provides, in relevant part:

(a) Initial taxes on disqualified person.—There is hereby imposed a tax on each prohibited transaction. The rate of tax shall be equal to 5 percent of the amount involved with respect to the prohibited transaction for each year (or part thereof) in the taxable period. The tax imposed by this subsection shall be paid by any disqualified person who participates in the prohibited transaction (other than a fiduciary acting only as such).

(b) Additional taxes on disqualified person.—In any case in which an initial tax is imposed by subsection (a) on a prohibited transaction and the transaction is not corrected within the taxable period, there is hereby imposed a tax equal to 100 percent of the amount involved. The tax imposed by this subsection shall be paid by any disqualified person who participated in the prohibited transaction (other than a fiduciary acting only as such).

■ The parties agreed that Baizer was a disqualified person and that he participated in the questioned transaction. The only disputed issue was whether the transfer of the accounts receivable constituted a prohibited transaction.

The Code defines a prohibited transaction as "sale or exchange, or leasing, of any property between a plan and a disqualified person." 26 U.S.C. § 4975(c)(1)(A). In *Commissioner v. Keystone Consolidated Indus., Inc.*, 508 U.S. 152, 158, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993), the Supreme Court held that a transfer of real estate to the pension plan constituted a prohibited transaction under 26 U.S.C. § 4975(c)(1)(A). The Court stated that "[i]t is well established for income tax purposes that the transfer of property in satisfaction of a monetary obligation is usually a 'sale or exchange' of the property." *Id.* The Court concluded that Congress's intent in enacting the prohibition was to prohibit both direct and indirect sales or exchanges where property is transferred "in exchange for diminution of the employer's funding obligation." *Id.* at 159, 113 S.Ct. 2006. The same reasoning applies here. The transfer of the accounts receivable was a prohibited transaction within the meaning of 26 U.S.C. § 4975.

## III

■ Baizer contends the Commissioner had no authority to impose the tax because Reorganization Plan No. 4 of 1978, 3 C.F.R. 275 (1978) ("Reorganization Plan") vests exclusive enforcement authority in the DOL. He is mistaken.

ERISA was enacted as comprehensive legislation to protect employee retirement funds. This broad legislation permitted both the DOL and the Department of the Treasury to promulgate regulations dealing with ERISA's provisions, including the prohibited transaction rules at issue. As a result of this overlap of authority, President Carter issued an executive order adopting the Reorganization Plan, 5 U.S.C. app. at 485, which allocated regulatory and enforcement power between the two departments. Of relevance here are the provisions relating to enforcement of 26 U.S.C. § 4975(a) & (b). At Section 102, the Reorganization Plan provides:

Except as otherwise provided in Section 105 of this Plan, all authority of the Secretary of the Treasury to issue the following described documents pursuant to the statutes hereinafter specified is hereby transferred to the Secretary of Labor:

(a) regulations, rulings, opinions, and exemptions Punder section 4975 of the Code ...

EXCEPT for (i) subsections 4975(a), (b), (c)(3), P(d)(3), (e)(1), and (e)(7) of the Code.

5 U.S.C. app. at 485–86. Section 105 of the Reorganization Plan further details the scope of the Secretary of the Treasury's power relating to § 4975(a) & (b):

> The transfers provided for in Section 102 of this Plan shall not affect the ability of the Secretary of the Treasury, subject to the provisions of Title III of ERISA relating to jurisdiction, administration, and enforcement, (a) to audit plans and employers and to enforce the excise tax provisions of subsections 4975(a) and 4975(b) of the Code, to exercise the authority set forth in subsections 502(b)(1) and 502(h) of ERISA, or to exercise the authority set forth in Title III of ERISA, including the ability to make interpretations necessary to audit, to enforce such taxes, and to exercise such authority.... However, in enforcing such excise taxes and, to the extent applicable, in disqualifying such plans the Secretary of the Treasury shall be bound by the regulations, rulings, opinions, and exemptions issued by the Secretary of Labor....

5 U.S.C. app. at 487.

While granting much authority to the DOL, the Reorganization Plan explicitly reserves to the Secretary of the Treasury the power to enforce §§ 4975(a) & (b). This reservation includes "the ability to make interpretations necessary to audit, [and] to enforce such taxes." However, the Reorganization Plan also provides that the Secretary of the Treasury shall be bound by prior "regulations, rulings, opinions, and exemptions issued by [the DOL]."

Baizer seizes on this "primary authority", as he calls it, retained by the DOL to determine whether a prohibited transaction has occurred, arguing that the IRS overstepped its bounds by making a determination on that issue. This argument is flawed because it assumes the DOL has exercised its primary authority by making a prior determination that the transfer of the accounts receivable was not a prohibited transaction.

In its complaint against Baizer, the DOL alleged that he, by "accepting certain accounts receivable as a contribution 'in kind' pursuant to an agreement entered into on May 31, 1988" engaged in a prohibited transaction "in violation of ... 29 U.S.C. Section 1106(a)(1)(A)." A prohibited transaction under § 1106(a)(1)(A) is similar to, but not the equivalent of a prohibited transaction under 26 U.S.C. § 4975(c)(1)(A).[2] The Internal Revenue Code imposes its penalties in strict fashion, without any inquiry into the subjective state of mind of the taxpayer; however, ERISA requires that the taxpayer either know or should know that the transaction is taking place. Thus, different statutes were involved in the IRS and DOL investigations.

This issue was addressed by the Seventh Circuit in *O'Malley v. Commissioner*, 972 F.2d 150 (7th Cir.1992), a case very similar to this one. There the DOL investigated potential prohibited transactions by the trustees of a pension fund. The DOL entered into a settlement with the trustees, but concluded that O'Malley did not violate 29 U.S.C. § 1106. Later the IRS determined that O'Malley was liable for his involvement in a prohibited transaction under 26 U.S.C. § 4975. O'Malley attempted the same defense as Baizer attempts in this case. The Seventh Circuit court rejected O'Malley's argument and held that:

> "[t]he basis for liability of a disqualified person for the excise tax under section 4975(a) and (b), i.e., participation, is not the same as the basis for liability of a fiduciary under section 406(a). A fiduciary is liable under section 406(a), ERISA, [same as 29 U.S.C. § 1106(a) ], if he or she knowingly caused the plan to

---

**2.** 29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—(A) sale or exchange, or leasing, of any property between the plan and a party in interest...."

engage in a transaction which is described in section 406(a)(1), ERISA."
*O'Malley*, 972 F.2d at 154 (quoting *O'Malley v. Commissioner*, 96 T.C. 644, 650–51, 1991 WL 54021 (1991)). Thus, a resolution by the DOL that the transfer was not a prohibited transaction under 29 U.S.C. § 1106(a) would not, as a matter of law, resolve the question of whether it was a prohibited transaction under 26 U.S.C. § 4975.

Regardless, the Consent Judgment does not even resolve any issue concerning prohibited transactions. To the contrary, it explicitly states that the parties have agreed to a final adjudication of all claims "without admitting or denying any of the allegations" contained in the complaint. Thus, even if the DOL complaint had included an allegation under 26 U.S.C. § 4975(c)(1)(A), the Consent Judgment does not constitute a finding by the DOL that the transfer was not a prohibited transaction. Further, the Consent Judgment expressly provides that "obligations imposed by this Judgment are not binding on any government agency other than the [DOL]."

In sum, neither the Reorganization Plan nor the actions of the DOL in this case prohibited the Commissioner from assessing tax penalties against Baizer under the Internal Revenue Code.[3]

## IV

■ The tax court did not err in imposing a second-tier tax pursuant to 26 U.S.C. § 4975(b), which allows imposition if the tax court finds—in addition to meeting all the other requirements of the sections—that the prohibited transaction was "not corrected within the taxable period."

The "taxable period" is defined in 26 U.S.C. § 4975(f)(2) as beginning with the date the prohibited transaction occurs and ending with the earliest of either the correction of the transaction, the assessment of the tax imposed by § 4975(a), or the date the notice of deficiency was mailed.

Baizer argues that the taxable period ends on the ninetieth day after the IRS mails the notice of deficiency. Baizer simply misapprehends the Code by relying on 26 U.S.C. § 4963 which, by its terms, applies only for purposes of subchapter C of chapter 42. The relevant statute, 26 U.S.C. § 4975, is found in chapter 43 of the Code and is explicitly governed by subsection (f)(2). Therefore, since the tax under § 4975(a) was assessed when the notice of deficiency was mailed, Baizer was required to make a "correction" by the date of mailing to avoid the second-tier tax. He did not.

A "correction" is defined in § 4975(f)(5) as, "with respect to a prohibited transaction, undoing the transaction to the extent possible, but in any case placing the plan in a financial position not worse than that in which it would be if the disqualified person were acting under the highest fiduciary standards." The meaning of "correction" is further explained in the Treasury Regulations requiring, but not being limited to, "rescission of the sale where possible." *See* 26 C.F.R. § 53.4941(e)–1(c)(3) (made applicable to § 4975 by 26 C.F.R. § 141.4975–13).

The tax court found that there was no rescission in this case because the accounts receivable were never replaced with cash. In addition, the tax court held that a correction could have been made by collecting the accounts receivable; however, there is no evidence in the record showing that any collections were ever made.

Baizer contended that a correction was made because all of the plan participants were paid what they were owed from the plan. However, the tax court ultimately rejected this argument based on the testimony of Mr. Levine, an employee of the accounting firm who claimed that he was never paid all that was owed to him. Additionally, Baizer admitted that he was never paid the benefits the Plan owed him. A correction requires "placing the plan in

---

3. For the same reasons, Baizer's claims that the Consent Judgment collaterally estopped

the penalty assessment fails. Similarly, *res judicata* does not apply.

a financial position not worse than that in which it would be if the disqualified person were acting under the highest fiduciary standards." 26 U.S.C. § 4975(f)(5). This did not occur. Thus, no correction was made within the meaning of the statute and the second-tier tax under 26 U.S.C. § 4975(b) was properly imposed.

### V

In sum, transfer of the accounts receivable was a prohibited transaction under the Internal Revenue Code. Neither the Reorganization Plan nor the Consent Judgment precluded the Commissioner from assessing tax penalties. The tax court's factual determination that a correction did not occur is not clearly erroneous.

AFFIRMED