SUZY'S ZOO®, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 00–70461.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 16, 2001

Filed Nov. 21, 2001

Richard A. Shaw, Bruce M. O'Brien, Higgs, Fletcher & Mack LLP, San Diego, California, Attorneys for petitioner-appellant Suzy's Zoo®.

Paula M. Junghans, Acting Assistant Attorney General, Glibert S. Rothenberg, A. Wray Muoio, Department of Justice, Tax Division, Washington, D.C., Attorneys for respondent-appellee Commissioner of Internal Revenue.

Before: SNEED, TROTT and TALLMAN, Circuit Judges.

SNEED, Circuit Judge:

Suzy's Zoo appeals from the U.S. Tax Court, challenging a deficiency finding for its tax year ending June 30, 1994. The Tax Court held that Suzy's Zoo exercised such degree of control over the manufacturing of its products by third party contractors that it was a "producer" under Internal Revenue Code ("I.R.C.") § 263A,[1] and that it did not qualify for the small reseller exception of I.R.C. § 263A(b)(2)(B) and could not deduct its production costs. The Tax Court also held that the "year of change" under I.R.C. § 481(a) was the first taxable year (1994) in which Suzy's Zoo changed its method of accounting to conform to I.R.C. § 263A.

---

1. All statutory citations herein are to the Internal Revenue Code of 1986, 26 U.S.C. §§ 1– 7437 (2001), unless otherwise indicated.

We have jurisdiction under I.R.C. § 7482(a)(1), and we affirm.

## BACKGROUND

Suzy's Zoo is a California corporation, owned 84% by its founder Suzy Spafford. Suzy's Zoo is in the business of social expression, creating cartoon characters that are imprinted on its greeting cards, stationery, and various other products. Its principal customers are card and gift shops, and its most popular product is greeting cards. Its revenues largely derive from sales of its products to retail stores through independent sales agents who receive a commission. The remainder of its revenues consists of royalties from licensees who pay Suzy's Zoo a fee for the use of its cartoon images. Suzy's Zoo does not sell any products other than those bearing its cartoon images. Nor does it sell any of its original cartoon characters. However, it sells licensee products at its own store.

Suzy's Zoo uses several independent contractors to manufacture its products. The process in which its products are manufactured is central to determination of whether Suzy's Zoo is a "producer" under I.R.C. § 263A. This process is explained here using the example of a greeting card manufactured by a printer and bindery. However, it is substantially the same for manufacturing of all other products made by Suzy's Zoo.

In manufacturing a greeting card, Suzy's Zoo creates cartoon characters and sends the original drawing as "flat art" to an independent printer. The printer photographs the cartoon drawing, performs color separations, and creates a "proof" of a particular card model, which is shipped to Suzy's Zoo for approval. The printer provides its own stock of paper and ink

and bears the risk of loss of the supplies and printed goods until they are shipped to Suzy's Zoo. The printer also modifies the proof if Suzy's Zoo is not satisfied. Once Suzy's Zoo approves the proof, it sends a purchase order to the printer who prints the sheets of greeting cards ordered and ships them to a cut and fold bindery.[2] The printer is not permitted to sell the greeting cards to anyone and does not have a proprietary interest in the cartoon characters created by Suzy's Zoo.

The printed sheets are transported to the bindery by trucking companies that have a contract with Suzy's Zoo. The bindery transforms the printed sheets to finished cards pursuant to the specifications of Suzy's Zoo and bears the risk of loss if it damages the cards during the cutting and folding process. Once the bindery sends the finished products to Suzy's Zoo, the latter's employees package the cards in boxes for sale to retailers.

On February 18, 1998, the Commissioner of Internal Revenue ("CIR") informed Suzy's Zoo of a $131,077 income tax deficiency for the tax year ending June 30, 1994. On May 18, 1998, Suzy's Zoo filed a petition for redetermination on the ground that it should be allowed to deduct its production costs. The CIR denied the petition and found that Suzy's Zoo was required to capitalize these costs in accordance with I.R.C. § 263A. The Tax Court agreed.

The Tax Court held that Suzy's Zoo was a "producer" under the meaning of I.R.C. § 263A and that it qualified for neither the small reseller exception of § 263A(b)(2)(B) nor the artistic business exception of § 263A(h). Consequently, the Tax Court held that Suzy's Zoo could not deduct its production costs even though its products are manufactured by third parties. The

---

**2.** Suzy's Zoo does not pay a sales tax on the products it acquires from the printer.

Tax Court further held that the "year of change" under I.R.C. § 481 was the first taxable year (1994) in which Suzy's Zoo computed its income tax under a different method of accounting than the preceding taxable year to conform to § 263A. Suzy's Zoo appealed.

## STANDARD OF REVIEW

■ Factual findings of a Tax Court are reviewed for clear error. *See Baizer v. C.I.R.*, 204 F.3d 1231, 1233–34 (9th Cir. 2000). Conclusions of law are reviewed de novo, as are the Tax Court's construction of the tax code and interpretation of a statute. *See id.* at 1233; *Leslie v. C.I.R.*, 146 F.3d 643, 650 (9th Cir.1998). The Tax Court's finding that the "year of change" is 1994 is a conclusion of law reviewed de novo.

■ The Court of Appeals reviews de novo the Tax Court's findings of mixed questions of law and fact. *See Hypotheek Land Co. v. C.I.R.*, 200 F.2d 390, 392 (9th Cir.1953). A mixed question of law and fact exists when primary facts are undisputed and ultimate inferences and legal consequences are in dispute. *See Kivel v. United States*, 878 F.2d 301, 304 (9th Cir. 1989). Here, the parties have stipulated to all facts. The Tax Court's finding that Appellant is a "producer" under I.R.C.

§ 263A is an ultimate inference from undisputed facts and is thus a mixed question of law and fact reviewed de novo.

## DISCUSSION

### I.  I.R.C. § 263A

The issue presented is whether Suzy's Zoo is a "producer" subject to the uniform capitalization rules of I.R.C. § 263A and unable to deduct from its income tax the costs of production of its products, even though third party contractors manufacture its products, supply the labor and materials, and bear the risk of loss.

Section 263A(a) requires capitalization of certain direct costs and the allocable share of indirect costs of property "produced" by the taxpayer or acquired for resale.[3] The term "produce" is defined by § 263A(g)(1) as "construct, build, install, manufacture, develop, or improve" and further defined by Treasury Regulation § 1.263A–2(a)(1)(i) to include "create, raise or grow." In addition, § 263A(g)(2) provides that "[t]he taxpayer shall be treated as producing any property produced for the taxpayer under a contract with the taxpayer...."

Section 263A and the corresponding treasury regulations provide several exceptions to the capitalization requirement, three of which are pertinent to this appeal.

3.  Section 263A provides in pertinent parts:

**(a) Nondeductibility of certain direct and indirect costs.—**
  **(1) In general.**—In the case of any property to which this section applies, any costs described in paragraph (2)—
    **(A)** in the case of property which is inventory in the hands of the taxpayer, shall be included in inventory costs, and
    **(B)** in the case of any other property, shall be capitalized.
  **(2) Allocable Costs.**—The costs described in this paragraph with respect to any property are—
    **(A)** the direct costs of such property, and
    **(B)** such property's proper share of those indirect costs (including taxes) part or all of which are allocable to such property....
**(b) Property to which section applies.**—Except as otherwise provided in this section, this section shall apply to—
  **(1)** Property produced by the taxpayer.—Real or tangible personal property produced by the taxpayer.
  **(2)** Property acquired for resale.—
    **(A) In general.**—Real or personal property described in section 1221(a)(1) which is acquired by the taxpayer for resale....
  26   U.S.C. § 263A.

The first two are found under the small reseller exception of § 263A(b)(2)(B), which provides an exception for two categories of resellers: (1) *small resellers with de minimis production activities* under Treasury Regulation § 1.263A–3(a)(2)(ii), and (2) *small resellers with personal property produced under contract* under Treasury Regulation § 1.263A–3(a)(3). The third exception is the (3) *routine purchase order* exception of Regulation § 1.263A–2(a)(1)(ii)(B)(2)(ii). None of these exceptions is applicable to Suzy's Zoo, who is a "producer," and not a reseller, under § 263A.

### (1) Construction of the Term "Produce" under § 263A

#### (i) Legislative History

The legislative history of § 263A indicates that Congress intended a single comprehensive set of rules to govern determination of whether costs should be capitalized, from the moment of acquisition through production and disposition of property. *See Von–Lusk v. C.I.R.*, 104 T.C. 207, 215, 1995 WL 39379 (1995). A broad construction of the term "produce" is necessary to attain this purpose. This is evident from the Senate Finance Committee's comment pertaining to enactment of § 263A: "The Committee believes that, in order to more accurately reflect income and make the income tax system more neutral, a single, comprehensive set of rules should govern the capitalization of costs of producing, acquiring, and holding property, including interest expense, sub-

ject to appropriate exceptions...." S.Rep. No. 99–313, at 140 (1986).[4] The broad definition of "produce" in § 263A(g)(1) and Treasury Regulation § 1.263A–2(a)(1)(i) is consistent with this congressional intent. Further support for this position is found in Treasury Regulation § 1.263A–2(a)(3), which provides that costs associated with production include "purchasing, storage, and handling" costs of property held for "future production," along with "post-production" costs, thereby expanding the horizon of "produce" from the present to the future.

We hold that the term "produce" is to be broadly construed under § 263A. *See Von–Lusk*, 104 T.C. at 215 (costs of meeting with governmental officials, obtaining building permits and drafting architectural plans were development costs amounting to "production" under § 263A); *Reichel v. C.I.R.*, 112 T.C. 14, 18, 1999 WL 9946 (1999) (real estate taxes had to be capitalized under § 263A as indirect costs of "producing" property even though property was not developed); *Carpenter v. C.I.R.*, T.C. Memo. 1994–289, 1994 WL 276915 (construction costs incurred by building contractor for an unsold home had to be capitalized under § 263A because the home was "produced" by the contractor).

#### (ii) A Producer Need Not Manufacture Its Own Products

■ The issue of whether a company that contracts with third parties to manufacture its products is a "producer" under § 263A is novel. However, several cases

---

**4.** *See also* S.Rep. No. 100–445, at 102 (1988). The Senate Committee on Finance noted the broad scope of the uniform capitalization rules of the Tax Reform Act of 1986 and the limited exceptions thereto:

The uniform cost capitalization rules apply to the manufacture or construction of all tangible property and to the purchasing and holding of property for resale. Exceptions to these rules are provided for property produced by the taxpayer for personal use, research and experimental costs ..., certain development and other costs of oil and gas wells and mineral[s] ..., property produced pursuant to a long-term contract, and the production of timber and certain ornamental trees.

*Id.*

dealing with the excise tax statute[5] hold that a company can be a "manufacturer" of property even though it does not itself manufacture the property. *See, e.g., Boise Nat'l Leasing, Inc. v. United States,* 389 F.2d 633, 635–637 (9th Cir.1968) (taxpayer who purchased auto parts from motor company and contracted with third party to complete assembly of vehicles was a "manufacturer"); *Vinal v. Peterson Mortuary, Inc.,* 353 F.2d 814, 817–818 (8th Cir.1965) (taxpayer who purchased autos and contracted to convert them to ambulances by third party who supplied labor and materials was a "manufacturer"); *Polaroid Corp. v. United States,* 235 F.2d 276, 277–78 (1st Cir.1956) (patent-holder was "manufacturer" when it purchased entire output, even though contractor supplied labor and materials and exercised complete control over the manufacturing process); *Charles Peckat Mfg. Co. v. Jarecki,* 196 F.2d 849, 852 (7th Cir.1952) (owner of patent on sun visors was "manufacturer" when third party fabricating the visors had no proprietary interest in completed product and worked under direction of patent owner).

The rationale of this line of precedent is applicable to § 263A and is consistent with the legislative intent that the term "produce" be broadly construed. As the Supreme Court held in *Carbon Steel Co. v. Lewellyn,* 251 U.S. 501, 506, 40 S.Ct. 283, 64 L.Ed. 375 (1920), Congress "did not contemplate that [a] 'person manufacturing' should use his own hands-it contemplated the use of other aid and instrumentalities, machinery, servants, and general agents ... and in this comprehensive way, contemplated that all of the world's efficiency might be availed of...."

Indeed, the only requirement for being a "producer" under § 263A is that the taxpayer be "considered an owner of the property produced under federal income tax principles." Treas. Reg. § 1.263A–2(a)(1)(ii)(A). The determination of ownership is "based on all of the facts and circumstances, including the various benefits and burdens of ownership vested with the taxpayer. A taxpayer may be considered an owner of property produced, even though the taxpayer does not have legal title to the property." *Id.*

Suzy's Zoo is the creator and sole owner of the cartoon images imprinted on its products. Although the printers use their own supply of paper in producing the greeting cards and bear the risk of loss until shipment, Suzy's Zoo is the owner of the cards from the beginning stage of production due to the degree of control it exercises over the manufacturing process. Therefore, Suzy's Zoo is a "producer" under § 263A. *See Carbon Steel Co.,* 251 U.S. at 506, 40 S.Ct. 283; *Boise Nat'l Leasing,* 389 F.2d at 635–37; *Vinal,* 353 F.2d at 817–18; *Polaroid Corp.,* 235 F.2d at 277–78; *Charles Peckat Mfg. Co.,* 196 F.2d at 852; *Reichel,* 112 T.C. at 18; *Von–Lusk,* 104 T.C. at 215; *Carpenter,* T.C. Memo. 1994–289.

Thus, the issue before us is whether Suzy's Zoo qualifies for any of the exceptions to the capitalization requirement of § 263A.

**(2) Small Reseller Exception of § 263A(b)(2)(B)**

Section 263A(b)(2)(B) provides an exception to the capitalization requirement for small resellers whose average annual gross receipts for the three preceding taxable years do not exceed $10,000,000.[6] The corresponding treasury regulations refer to this provision as the

---

**5.** 26 U.S.C. §§ 4061, 4218 (1954); 26 U.S.C. §§ 3403, 3406 (1939).

**6.** Section 263A(b)(2)(B) provides: "Subparagraph (A) shall not apply to any personal

"small reseller exception" and provide that two categories of small resellers qualify for the exception: (1) small resellers with de minimis production activities under Treasury Regulation § 1.263A–3(a)(2)(ii), and (2) small resellers with personal property produced under contract under Treasury Regulation § 1.263A–3(a)(3).[7] Neither of these exceptions applies to Suzy's Zoo. *See Carpenter*, T.C. Memo. 1994–289 (small reseller exception inapplicable to contractor who was a "producer" under § 263A by virtue of purchasing land to build and sell homes thereon). Suzy's Zoo is a producer, and its only resale activity is sale of licensee products at its own store, the revenues for which are a small percentage of its gross revenues.

### (i) Small Reseller with De Minimis Production Activities

Treasury Regulation § 1.263A–3(a)(2)(ii) provides: "a small reseller is not required

> property acquired during any taxable year by the taxpayer for resale if the average annual gross receipts of the taxpayer (or any predecessor) for the 3–taxable year period ending with the taxable year preceding such taxable year do not exceed $10,000,000." During the three taxable years preceding 1994, the gross receipts of Suzy's Zoo were $6,711,723, $6,772,772, and $5,898,638, averaging below $10,000,000.

7. Statutes must be given effect in accordance with the purpose clearly manifested by Congress as reflected in House and Senate committee reports. *See C.I.R. v. Bilder*, 369 U.S. 499, 504, 82 S.Ct. 881, 8 L.Ed.2d 65 (1962). Treasury regulations are binding so long as they implement congressional mandate in some reasonable manner and are not arbitrary, capricious or manifestly contrary to the Internal Revenue Code. *See Redlark v. C.I.R.*, 141 F.3d 936, 939–940 (9th Cir.1998). We find the treasury regulations cited here reasonable and binding.

8. Treasury Regulation § 1.263A–3(a)(2)(iii)(B) gives an example of a small reseller with de minimis production activities. It provides:

to capitalize additional section 263A costs associated with any personal property that is produced incident to its resale activities, provided the production activities are de minimis . . . ." The determination of whether production activities are de minimis is based on "all facts and circumstances" including the "volume of the production activities." Treas. Reg. § 1.263A–3(a)(2)(iii)(A). Production activities are "presumed de minimis" when "[t]he gross receipts from the sale of the property produced by the reseller are less than 10 percent of the total gross receipts of the trade or business," and "[t]he labor costs allocable to the trade or business' production activities are less than 10 percent of the reseller's total labor costs allocable to its trade or business."[8] *Id.*

Suzy's Zoo does not qualify for this exception. It is, to repeat, a producer not a reseller. Its production activities are nei-

> Taxpayer N is a small reseller in the retail grocery business whose average annual gross receipts for the three previous taxable years are less than $10,000,000. N's grocery stores typically contain bakeries where customers may purchase baked goods produced by N. N's gross receipts from its bakeries are 5% of the entire grocery business. N's labor costs from its bakeries are 3% of its total labor costs allocable to the entire grocery business. Because both ratios are less than 10%, N's production activities are de minimis. Further, because N's production activities are incident to its resale activities, N is not required to capitalize any additional section 263A costs associated with its produced property.
>
> This example indicates that the word "incident," as used in this regulation, refers to "a minor event or condition that is subordinate to another" rather than "tending to arise or occur as a result or accompaniment." *See The American Heritage Dictionary of the English Language* 912 (3d ed.1992).

ther de minimis nor incident to its resale activities. Its primary activity is production of products bearing cartoon images, as evidenced by the fact that sales of its own products formed approximately 89% of its gross receipts in its 1994 taxable year.[9] It is true that Suzy's Zoo sells licensee products at its own store; however, these products form a fraction of its total sales and an insignificant portion of its activities. Its production activities, therefore, do not satisfy the de minimis requirement. Moreover, these activities are not "incident" to its resale activities. Suzy's Zoo is primarily engaged in production. Its only resale activity is sale of licensee products at its own headquarters store. This does not qualify Suzy's Zoo for the small reseller with de minimis production activities exception.[10]

### (ii) Small Reseller with Personal Property Produced under Contract

An exception to the capitalization requirement of § 263A exists for a small reseller with personal property produced under contract with an unrelated person "if the contract is entered into incident to the resale activities of the small reseller and the property is sold to its customers." Treas. Reg. § 1.263A–3(a)(3).

Suzy's Zoo does not qualify for this exception. It is a producer rather than a reseller. Its primary means of production is to enter into contracts with third parties to manufacture its products according to precise specifications. These contracts are not entered into incident to the resale activities of Suzy's Zoo, but are an essential component of its production activities.

That the contractors who manufacture its products supply the labor and materials and bear the risk of loss in the event of defective production, does not under the facts of this case make Suzy's Zoo a reseller.

Suzy's Zoo dominates the manufacturing process from the start and gives detailed specifications to the contractors on how its products should be manufactured. It creates the cartoon images imprinted on its products, in the absence of which they would likely not be sold. The creation of these images is a significant, if not the most important, part of the production process. Suzy's Zoo chooses the products and the manner in which they should be produced and employs different contractors to perform each step of production. The contractors are merely the instruments by which Suzy's Zoo produces its products. Indeed, Suzy's Zoo is not a reseller but a producer under I.R.C. § 263A.

### (3) Routine Purchase Order Exception

■ Nor can Suzy's Zoo avail itself of the routine purchase order exception to the capitalization requirement of § 263A. Treasury Regulation § 1.263A–2(a)(1)(ii)(B)(2)(ii) provides an exception to the capitalization requirement of § 263A for routine purchase orders in which the contractor makes no more than de minimis modifications to the property. It provides:

A routine purchase order for fungible property is not treated as a contract for purposes of this section. An agreement will not be treated as a routine purchase order for fungible property, however, if

---

**9.** During its 1994 tax year, Suzy's Zoo had gross receipts in the amount of $5,874,039, of which $5,241,830 was derived from sales, $623,469 from licensing royalties, and $8,740 from interest, discounts and service charges.

**10.** *See 5 Standard Federal Tax Reporter* (CCH) ¶ 13,829.021 at 28465–66 (2001) (explaining the scope of the small reseller exception with de minimis production activities).

the contractor is required to make more than *de minimis* modifications to the property to tailor it to the customer's specific needs, or if at the time the agreement is entered into, the customer knows or has reason to know that the contractor cannot satisfy the agreement within 30 days out of existing stocks and normal production of finished goods.

Treas. Reg. § 1.263A–2(a)(1)(ii)(B)(2)(ii).

Suzy's Zoo does not qualify for this exception because the contractors who manufacture its products transform basic materials to finished products. Far from resulting in de minimis modifications, the manufacturing process involves significant changes to the property tailored to the specific needs of Suzy's Zoo. The routine purchase order exception perhaps would be applicable if Suzy's Zoo purchased a final product with minor modifications tailored to it and merely imprinted its cartoon characters on the product. Suzy's Zoo, however, dominates the manufacturing process by strict oversight and precise stylistic demands from the very beginning. It creates the cartoon characters, determines the products to be produced on which the images are imprinted, and gives detailed orders to the contractors to make significant modifications to the materials supplied by them. Suzy's Zoo examines the products fabricated and, if unsatisfied, demands additional modifications tailored to its specific needs.

Suzy's Zoo frequently uses more than one contractor to complete each portion of the manufacturing process, such as by employing printers and binderies to produce greeting cards. Significant modifications are made to the property in each step of production. For instance, sheets are fabricated by the printer from blank paper on which cartoon images are printed, and greeting cards are prepared from these sheets by the bindery. Each of these steps in the manufacturing process represents a more than de minimis modification to property. The routine purchase order exception of Regulation § 1.263A–2(a)(1)(ii)(B)(2)(ii) is thus inapplicable to Suzy's Zoo.

## II. The "Year of Change"

■ I.R.C. § 481 authorizes the CIR to adjust the amount of tax due in the year a taxpayer changes its method of accounting, whether initiated by the taxpayer or the CIR. *See Rankin v. C.I.R.*, 138 F.3d 1286, 1287 (9th Cir.1998); *Graff Chevrolet Co. v. Campbell*, 343 F.2d 568, 572 (5th Cir.1965). The purpose of § 481 is to prevent either a distortion of taxable income or a windfall to the taxpayer arising from a change in accounting method when the statute of limitations bars reopening of the taxpayer's earlier returns. *See Western Cas. & Surety Co. v. C.I.R.*, 571 F.2d 514, 519 (10th Cir.1978); *Graff Chevrolet*, 343 F.2d at 572. Section 481(a) provides:

(a) **General rule.**—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted....

26 U.S.C. § 481(a).

We must decide whether the "year of change" under § 481(a) is the first taxable year (1994) in which Suzy's Zoo changed its method of accounting from the preceding taxable year to conform to § 263A or,

as Suzy's Zoo contends, the tax year ending June 30, 1988, because its method of accounting changed in that year by "operation of law" pursuant to § 803(d) of the Tax Reform Act of 1986.[11] Suzy's Zoo argues that the three-year statute of limitations of I.R.C. § 6501(a) bars the CIR from making any adjustments to its 1994 tax returns.[12]

Suzy's Zoo is mistaken. The CIR is correct. The first taxable year in which Suzy's Zoo actually changed its method of accounting was 1994. In that year, the CIR determined that § 263A applied to Suzy's Zoo. It is irrelevant when Suzy's Zoo should have changed its method of accounting. The plain language of I.R.C. § 481(a) states that the year of change is the first taxable year in which income tax *is computed* by a different method of accounting from the preceding taxable year. *See* I.R.C. § 481(a)(1); Treas. Reg. § 1.481–1(a)(1).

 Thus, the statute of limitations of I.R.C. § 6501(a) is inapplicable to § 481, the purpose of which is to prevent a windfall to the taxpayer for omissions or duplications arising purely from a change in the method of accounting when the statute of limitations would otherwise bar reopening the taxpayer's prior returns. *See Rankin*, 138 F.3d at 1288 ("the statute of limitations does not apply to § 481"); *Kohler Co. & Subsidiaries v. United States*, 124 F.3d 1451, 1455 (Fed.Cir.1997) (the three-year statute of limitations of § 6501(a) does not

bar the CIR from making a § 481 adjustment to a closed tax year); *Graff Chevrolet*, 343 F.2d at 572 ("section 481 would be virtually useless if it did not affect closed years"). We hold that the "year of change" under § 481(a) is the first taxable year in which Suzy's Zoo changed its method of accounting to conform to I.R.C. § 263A.

**AFFIRMED.**

---

11. Section 803 of the Tax Reform Act of 1986 incorporates the capitalization rules of I.R.C. § 263A. Section 803(d)(1) provides: "the amendments made by this section shall apply to costs incurred after December 31, 1986, in taxable years ending after such date." Tax Reform Act of 1986, Pub.L. No. 99–514, § 803(d). The first taxable year of Suzy's Zoo after December 31, 1986, was the tax year ending June 30, 1988, when it was required

to change its method of accounting to conform to § 263A.

12. I.R.C. § 6501(a) provides in pertinent part: "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) ..., and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."