**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RIVER CITY RANCHES #1 LTD.,
LEON SHEPARD, TAX MATTERS
PARTNER, RIVER CITY RANCHES
#2 LTD., LEON SHEPARD, TAX
MATTERS PARTNER, RIVER CITY
RANCHES #3 LTD., LEON
SHEPARD, TAX MATTERS
PARTNER, RIVER CITY RANCHES
#4 LTD., LEON SHEPARD, TAX
MATTERS PARTNER, RIVER CITY
RANCHES #5 LTD., LEON
SHEPARD, TAX MATTERS
PARTNER, RIVER CITY RANCHES
#6 LTD., LEON SHEPARD, TAX
MATTERS PARTNER, ET AL.,
         *Petitioners-Appellants,*

v.

COMMISSIONER OF INTERNAL
REVENUE,
         *Respondent-Appellee.*

No. 03-73853

T.C. Nos.
787-91, 4876-94,
9550-94, 9552-94,
9554-94, 13595-94,
13597-94, 13599-94,
382-95, 383-95, 385-95,
386-95, 14718-95,
14719-95, 14720-95,
14722-95, 14724-95,
21461-95, 5196-96,
5197-96, 5198-96,
5238-96, 5239-96,
5240-96, 5241-96,
9779-96, 9780-96,
9781-96, 14038-96,
21774-96, 3304-97,
3305-97, 3306-97,
3311-97, 3749-97,
15747-98, 15748-98,
15749-98, 15750-98,
15751-98, 15752-98,
15753-98, 15754-98,
19106-98, 13250-99,
13251-99, 13256-99,
13257-99, 13258-99,
13259-99, 13260-99,
13261-99, 13262-99,
16557-99, 16563-99,
16568-99, 16570-99,
16572-99, 16574-99,
16578-99, 16581-99,
17125-99

OPINION

3669

Appeal from an Order of the
United States Tax Court

Argued and Submitted
January 11, 2005—San Francisco, California

Filed March 25, 2005

Before: Myron H. Bright,* A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Bright

*The Honorable Myron H. Bright, United States Circuit Judge for the
Eighth Circuit, sitting by designation.

**COUNSEL**

Montgomery W. Cobb, Portland, Oregon, for the petitioners-appellants.

Eileen J. O'Connor, Assistant Attorney General, Richard Farber, and Anthony T. Sheehan, Department of Justice, Appel-

late Section, Tax Division, Washington, D.C., for the respondent-appellee.

## OPINION

BRIGHT, Circuit Judge:

### Introduction

We review here an extensive opinion and judgment of the Tax Court[1] relating to the tax returns of several affiliated sheep-breeding partnerships. We affirm in part, reverse in part, and remand for further proceedings. The federal Internal Revenue Service ("IRS") issued Final Partnership Administrative Adjustments ("Adjustments") to the tax returns of nine sheep-breeding partnerships for various past tax-years.[2] The Adjustments resulted in increased tax liabilities for the individual partners, such that the partners would owe significant back-taxes, penalties, and interest if the Adjustments were valid. The appellant partnerships petitioned the Tax Court for readjustment of the partnership tax returns, and the court consolidated the cases for trial.

The partnerships claimed, first, that some of the Adjustments were invalid because the IRS filed them untimely, relying on invalid extensions of the limitations periods that governed the Adjustments. The partnerships claimed, second, that insofar as the Adjustments were valid, the partnerships were entitled to certain theft-loss deductions on the adjusted

---

[1]The United States Tax Court, Judge Howard A. Dawson, Jr., adopting the opinion of Special Trial Judge Stanley J. Goldberg.

[2]The partnerships are River City Ranches #1 Ltd., River City Ranches #2 Ltd., River City Ranches #3 Ltd., River City Ranches #4 Ltd., River City Ranches #5 Ltd., River City Ranches #6 Ltd., River City Ranches #7 Ltd., Ovine Genetic Technology Syndicate 1987-1, and Ovine Genetic Technology 1990.

tax returns. The Tax Court denied the petitions entirely, holding that the Adjustments were all valid and that the partnerships were entitled to no theft-loss deductions. On the latter point, the Tax Court held that the asserted losses were not thefts from the partnerships and, in the alternative, even if they were, the partnerships could not claim the deductions for the years at issue.

On appeal, the partnerships argue that the trial of the case was flawed on three procedural points: that the Tax Court improperly denied the partnerships discovery pertinent to the years for which theft-loss deductions could be claimed; that the court improperly denied discovery pertinent to the validity of the extensions of the limitations periods within which the Adjustments could be filed; and that the court improperly rejected a stipulation of fact as to the principal place of business of the partnerships.

Further, on a substantive matter, the partnerships argue that the Tax Court erred in holding that the asserted theft-losses were not thefts from the partnerships but were only thefts from the individual partners.

As to the final issue on appeal, the partnerships and the IRS agree that the Tax Court erred in holding that it does not have jurisdiction to make factual findings concerning the validity of impositions of additional interest on back-taxes owed by the individual partners, as a penalty under 26 U.S.C. § 6621(c) (repealed in 1989, but still applicable to tax years before then) for engaging in sham business transactions the sole purpose of which was to gain tax benefits.

We rule as follows: (1.) We decide that the partnerships are not entitled to additional discovery pertinent to the years for which theft-loss deductions can be claimed. (2.) We affirm the Tax Court's holding that none of the losses — if they are thefts from the partnerships — can be claimed for any of the tax-years at issue. (3.) We determine that the Tax Court did

not erroneously reject any stipulation of fact. (4.) We determine that the partnerships are, however, entitled to limited additional discovery relevant to the validity of the extensions of the limitations periods. Finally (5.), we hold that the Tax Court does have jurisdiction to make findings concerning the imposition of penalty-interest under 26 U.S.C. § 6621(c).

Because we affirm the Tax Court's holding that the partnerships cannot claim the asserted theft-losses in the years at issue in any event, we do not review or make any decision concerning the Tax Court's decision that the asserted losses do not constitute thefts from the partnerships, but only from the partners.

Accordingly, we vacate the judgment of the Tax Court in these cases and remand so that the partnerships will be given some limited additional discovery relating to the validity of Adjustments issued under the contested extensions of limitations periods. The Tax Court will reconsider the validity of those Adjustments after additional discovery is allowed. Also, we remand for the Tax Court to make findings as to penalty-interest.

We sketch the underlying facts below, only as they bear on the discrete issues we review.

## Discussion

*The Tax Court's Asserted Rejection of the Principal-Place-of-Business Stipulation*

The partnerships complain that the Tax Court rejected the parties' stipulation that — as the partnerships characterize it in briefing — "the principal place of business of the partnerships was in Oregon." The partnerships urge reversal on this basis. Their contention, although not entirely clear, seems to be that in determining whether the asserted theft-losses were thefts from the partnerships, the Tax Court looked to the law

of the wrong state, because it erroneously rejected the stipulation. The IRS does not respond to appellants' argument on this issue.

The partnerships' argument is meritless. In their briefs, the partnerships do not quote the stipulation at issue, which merely says that the principal place of business was in Oregon at the time the partnerships filed their petitions for readjustment. SER 24. The Tax Court did not reject this stipulation. The court's statements concerning the principal place of business related to the time at which the asserted theft-losses occurred, not the time at which the petitions were filed. There was no stipulation as to the former time.

Additionally, even had the asserted rejection of a stipulation been actual, the partnerships do not show, as they must, that it would have made any difference. *See Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 974 (9th Cir. 1994) ("The harmless error standard in civil cases is whether the . . . verdict is more probably than not untainted by the error."). The partnerships do not show that any relevant law varied materially from Oregon to California or Nevada (the other relevant states). Furthermore, after commenting on the place of business of the partnerships, the Tax Court did in fact consider whether the losses in dispute constituted theft from the partnerships under Oregon law. We do not understand precisely what the partnerships complain of on this issue. In any event, the Tax Court did not erroneously reject any stipulation.

*Discovery Pertinent to Theft-Loss Deductions*

[1] The partnerships argue that the Tax Court denied them a fair opportunity to litigate their claim that they are entitled to theft-loss deductions for the years at issue. The Internal Revenue Code provides that a theft-loss may be deducted only for the year in which it is discovered — not the year in which the loss occurs. 26 U.S.C. § 165(a). The partnerships

conceded at trial that they discovered the asserted theft-losses after the years in question. They argued to the Tax Court, however, that the IRS is equitably estopped from enforcing this provision of the law to exact money from them (or their individual partners, who pay the taxes). The partnerships argue that the court denied discovery of IRS files that they were entitled to and without which they could not make good their equitable estoppel defense.

We review a denial of discovery for abuse of discretion. *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 527 (9th Cir. 1986). We will hold an order denying discovery to be an abuse of discretion only "upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

[2] The Supreme Court allows the possibility that equitable estoppel might be successfully asserted against the government — whether to get money from the government or as a defense to the government's exaction of money. *See Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 426 (1990); *Heckler v. Cmty. Health Svcs. of Crawford County, Inc.*, 467 U.S. 51, 59-60 (1984). In general,

> the party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse," and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.

*Id.* at 59. The Court has made clear that estoppel will not lie against the government except upon a stronger showing than is required in the ordinary case. *Id.* at 59-60.

[3] As the Tax Court noted, the Ninth Circuit has held, in a case involving a taxpayer's attempt to recoup payments

made to the IRS, that equitable estoppel cannot lie against the government absent a showing of "affirmative conduct going beyond mere negligence." *Purcell v. United States*, 1 F.3d 932, 939 (9th Cir. 1993).

The Tax Court found that the IRS had engaged in no conduct which the partnerships could reasonably have relied on to change their position for the worse. Even if the IRS did nothing to act as a watchdog for the individual partners, to warn them that Hoyt was swindling them and looting the partnerships, and that their claimed tax benefits were invalid, this would not constitute the "affirmative conduct" on which the partnerships could "rely" that is necessary to invoke equitable estoppel against the government. The court found, however, that the IRS had, on numerous occasions, communicated to the partnerships and to the individual partners messages that called into question the validity of tax benefits the partnerships claimed — the subsequent rejection of which, in the Adjustments, are at issue in these cases.

The partnerships do not dispute the Tax Court's specific findings as to actions taken by the IRS. The partnerships' hope and argument as to discovery on this point must be, then, that there may be other, countervailing IRS actions, evidence of which may lie in IRS files. Such IRS actions help the partnerships only if the partnerships reasonably relied on the actions and thereby discovered the asserted theft-losses later than the years in question.

In the ordinary case, if the IRS had taken actions on which the partnerships relied, the partnerships would of course know about those actions. They would not need to examine IRS files to learn of those actions in the first instance, as the partnerships here wish to do. This case is unusual, but a brief sketch of the facts shows that the result is the same.

Here, Walter J. Hoyt, III (Hoyt), ran the partnerships, which were among scores of partnerships Hoyt created as part

of a massive swindle extending from 1971 (involving cattle partnerships) and 1978 (involving sheep partnerships) to 1998 — defrauding his partners, receiving (as general or managing partner) their capital contributions to the partnerships and then stealing those contributions, and as Tax Matters Partner ("TMP") claiming phony tax benefits for the partnerships, on which his partners relied for purposes of their individual tax returns. Hoyt did not keep ordinary business records for each of his many partnerships, but kept certain overall records. Hoyt was eventually caught, and is now serving an approximately twenty-year prison sentence for fraud. The new TMPs for the partnerships, who are pursuing the present cases, thus did not inherit the records and continuous institutional knowledge that a partnership would ordinarily possess. The IRS, which had conducted a roughly twenty-year investigation of Hoyt's operations, presumably has far greater knowledge of the partnerships' matters than the current TMPs have.

Because of Hoyt's commingling of the records of his various partnerships, the IRS followed suit and maintained the bulk of its documents pertaining to all Hoyt entities in a single file, with only very limited portions of its records in files specific to individual partnerships. The Tax Court granted the partnerships discovery only of the files specific to the individual partnerships at issue here, so that the partnerships did not see the bulk of the IRS's records.

While the partnerships reasonably suppose that the IRS knows more about the partnerships than the partnerships themselves know, the discovery issue comes down to a narrow question: If the IRS engaged in affirmative conduct that the partnerships reasonably relied on, and that caused the partnerships to discover the asserted theft-losses later than they otherwise would have, would evidence of such conduct be unavailable to the partnerships now, without the discovery they were denied?[3]

---

[3]The issue would be presented differently if the partnerships alleged specific conduct and sought discovery only to confirm or negate the specifics they had knowledge of already.

**[4]** The managing partner of each of the partnerships, Hoyt, knew about the thefts at the time they occurred, because he was the thief. The partnerships could not have detrimentally relied, through Hoyt, on IRS actions to forestall discovery of the theft.[4] If the other partners, outside of the partnership management, relied on affirmative IRS actions that forestalled their discovery of Hoyt's theft, then evidence of the actions would lie with the partners. The partnerships would thus not need the IRS's central Hoyt files. The Tax Court thus did not abuse its discretion in denying discovery related to the partnerships' equitable-estoppel argument.

**[5]** Because the year-of-discovery issue was properly litigated at trial, and because the partnerships admitted that they did not discover the asserted theft-losses during the years at issue, we affirm the Tax Court's holding that the partnerships cannot take the deductions in the years at issue. Our holding here makes it unnecessary to review the Tax Court's holding that the thefts at issue were not thefts from the partnerships, but only from the individual partners.

*Discovery Pertinent to the Validity of the Adjustments*

The IRS issued some of the Adjustments after the default limitations periods had expired. With regard to these Adjustments, however, Hoyt, acting for the partnerships, had extended the limitations periods. The partnerships argued before the Tax Court that these extensions are invalid, because Hoyt executed them while disabled by conflicts between his own interests and those of his partners. The partnerships argue on appeal that they could not present this defense adequately without the denied discovery.

**[6]** This Court has recognized that a TMP may lack capac-

---

[4]We do not imply that knowledge of a partner who is defrauding the partnership is imputed to the partnership. *See* Cal. Corp. Code § 16102 (2005); Or. Rev. Stat. § 67.010(6).

ity to bind his partners and the partnership, where the TMP operates under a conflict of interest. *See Phillips v. Commissioner*, 272 F.3d 1172, 1175 (9th Cir. 2001) ("Trust law, generally, invalidates the transaction of a trustee who is breaching his trust in a transaction in which the other party is aware of the breach."). The Tax Court found that the partnerships did not present evidence sufficient to show that Hoyt executed the extensions under disabling conflicts of interest. The question here is whether the partnerships were entitled to discovery of the IRS's central Hoyt files, to find out the facts concerning Hoyt's interests in his dealings with the IRS, and what the IRS knew about Hoyt's interests and his treatment of the partners' interests.

The partnerships argued to the Tax Court that conflicts arose not only because of past criminal investigations of Hoyt by the IRS, but also by Hoyt's ongoing fraud and theft, committed against his partners. The partnerships argued that Hoyt's interests, specifically regarding tax issues, diverged from those of the partnerships.

**[7]** The Tax Court analogized this case to the *Phillips* case, 272 F.3d 1172, in which this Court held that the mere existence of past criminal investigations of a TMP does not prove a disabling conflict of interest. Here, the Tax Court emphasized that, as in *Phillips*, Hoyt was not under active criminal investigation by the IRS when he signed any of the extensions. The comparison to *Phillips* is unilluminating, however, because in *Phillips* "[t]he facts were stipulated by the parties in skeletal form sufficient to provide, without much flesh, what was necessary to raise the single issue relied on by Phillips." *Id.* at 1173. The lesson of *Phillips* is that the sole fact of past criminal investigations does not establish a disabling conflict of interest. But there is more to the partnerships' assertion of a disabling conflict than past criminal investigations, and the record before us in this case is not a bare skeleton.

The record before us presents at least one apparent conflict which, if substantiated, might render the extensions Hoyt signed legally incompetent and void. To explain this apparent conflict, we turn again to some of the facts of record.

Hoyt signed all but one of the extensions between February 1991 and March 1993. The IRS had been investigating Hoyt, though not always by its criminal investigation division, since about 1980. The IRS became convinced that Hoyt's many partnerships were fraudulent tax shelters. This was difficult to prove, however, because of the nature of the operations.

The Hoyt entities were ostensibly livestock-breeding enterprises. The nine partnerships at issue in these cases were sheep-breeding, but the majority of Hoyt's partnerships were cattle-breeding. While Hoyt's long-running swindle was essentially a matter of taking money in exchange for cows and sheep that did not exist, the operations did have thousands of actual cows and sheep on actual ranches with actual breeding facilities run by well-known and highly respected breeders. The Hoyt ranches included twelve active ranches and half a million acres of land rented from the Federal Bureau of Land Management. It was not a simple matter, then, to prove that some of the livestock that appeared as figures on business papers had no corporeal substance on the ground.

From about 1980 the IRS, convinced that the Hoyt partnerships were shams, generally disallowed tax benefits claimed by the partnerships, leading to much litigation in the Tax Court. With many cows and sheep spread over many facilities, the IRS had difficulty proving that the partnerships were shams, and in 1989 the IRS suffered a major setback. The Tax Court, in *Bales v. Commissioner,* T.C. Memo. 1989-568, 58 T.C.M. (CCH) 431, found that the cattle partnerships were not shams. After *Bales*, the IRS determined to conduct a full headcount of the Hoyt livestock, to attempt to prove the fraud.

A headcount could provide proof that Hoyt had been taking money for non-existent cows and sheep — for which Hoyt

presumably knew he was vulnerable to criminal prosecution. Hoyt did not cooperate with the headcount. His lack of cooperation delayed the count, until finally a federal court order permitting the count was issued in the Fall of 1992. The IRS finished the headcount in the Spring of 1993.

Hoyt signed the extensions between February 1991 and March 1993 — that is, in the period when the IRS was first seeking and then performing the headcount that would prove his crimes.

[8] The extensions of the limitations periods within which the IRS could issue Adjustments may have been against the partners' interests but in Hoyt's interest. The sooner the IRS issued the Adjustments, the more difficult it would be for the IRS to defend them. Additionally, because the partners had in fact claimed tax benefits they were not entitled to, it was in their interest for the Adjustments to be issued sooner rather than later, even if the IRS could successfully defend the Adjustments. Delay would mean greater penalties and interest when eventually the back-taxes were levied. Finally, it was in the partners' interest to receive the strong indication, which the Adjustments provided, that Hoyt was looting the partnerships. The Tax Court noted that such measures by the IRS led some partners to withdraw from other partnerships and to challenge Hoyt's management of them — by means that included a civil fraud suit.

[9] Hoyt's interests appear to have run in the opposite direction — toward delaying as long as possible any threat to the house of cards he had constructed and kept standing since 1971. The extensions he signed would, and did, forestall the issuance of Adjustments that would have contributed to tensions with his partners and threatened his management of the partnerships. Facing the threat of a potential and then an actual IRS headcount that would prove his crimes, Hoyt might well have found it in his interest to offer any concession to the IRS that did not harm him personally, in the hope that it

would put off the day of reckoning — perhaps forever, if his long run of luck held out.

**[10]** Because the evidence in this unusual case lies largely with the IRS, the partnerships could not fairly and reasonably litigate their challenge to the extensions and the Adjustments executed pursuant to them without this discovery. The Tax Court thus abused its discretion in denying such discovery, and the partnerships suffered actual and substantial prejudice because of the denial. Accordingly, the Tax Court should permit further discovery limited to the question whether Hoyt executed the extensions while disabled by conflicts of interest.

*Jurisdiction of the Tax Court to Make Penalty-Interest Findings*

The parties asked the Tax Court to make factual findings concerning whether the partnerships' transactions were designed merely to secure tax benefits, without any other substantive economic purpose. The parties wanted the court to make these findings because they bear on whether the IRS can require the investor-partners to pay a higher interest rate on the back taxes for certain years. *See* 26 U.S.C. § 6621(c). The Tax Court held that it lacked jurisdiction to make such findings. The parties agree that the court erred in so concluding.

Both the Tax Court's interpretation of 26 U.S.C. § 6621(c) and its holding that it lacked subject-matter jurisdiction to make findings under that statute are legal conclusions reviewable de novo. *Suzy's Zoo v. Commissioner*, 273 F.3d 875, 878 (9th Cir. 2001); *Crawford v. Commissioner*, 266 F.3d 1120, 1123 (9th Cir. 2001).

We agree with the parties that the Tax Court erred. Because the issue is somewhat involved, and the Tax Court considered the issue at length, we explain our reading of the relevant law.

The partnerships filed petitions with the Tax Court to read-just partnership tax items, following the IRS's issuance of Adjustments. This petition procedure is governed by 26 U.S.C. § 6226. This section also sets the scope of review for the Tax Court reviewing the petition:

> (f) Scope of judicial review.—A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership adminis-trative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

The question, then, is what counts as a partnership item. The term is defined at 26 U.S.C. § 6231(a)(3):

> (3) Partnership item.—The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partner-ship's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

The Tax Court saw that the definition here is limited by the phrase "required to be taken into account . . . under . . . subti-tle A."

The character of the partnerships' transactions does relate back to subtitle A, because it determines the individual part-ners' personal income taxes — a subtitle A matter, *see* 26 U.S.C. § 1. A partnership's tax items affect not the (non-existent) income tax of the partnerships, but the income tax of the partners. 26 U.S.C. § 6222 (subtitle F provision for admin-

istering subtitle A requirements). A partnership's tax items, which determine the partners' taxes, are litigated in partnership proceedings — not in the individual partners' cases. 26 U.S.C. § 6221 (subtitle F provision for administering subtitle A requirements).

[11] The nature of the partnerships' transactions is a "partnership item" then, because it is "required to be taken into account . . . under . . . [the income tax provisions of] subtitle A," as affecting the income tax of the individual partners. As a "partnership item," the character of the partnerships' transactions is within the Tax Court's scope of review.

[12] The Tax Court erred in holding that it had no jurisdiction to make findings concerning the character of the partnerships' transactions, for purposes of the 26 U.S.C. § 6621 penalty-interest provisions. Accordingly, we remand for the court to make such findings.

## Conclusion

For the reasons we have stated, we affirm the Tax Court's holding that these partnerships cannot claim a theft-loss deduction in the years at issue.

We vacate the judgment of the Tax Court as to all Adjustments issued pursuant to an extension of the limitations period, and remand for additional discovery on the question of whether Hoyt executed the extensions while disabled by conflicts between his own interests and those of his partners, and any necessary retrial following such discovery. As to Adjustments executed within the default limitations periods, our ruling does not disturb the Tax Court's denial of the petitions for readjustment.[5]

---

[5]The record before us does not clearly identify which Adjustments were filed within the default limitations periods and which were filed under the disputed extensions. The Tax Court will distinguish these two classes of adjustments on remand.

We reverse the judgment of the Tax Court that the court lacks jurisdiction in this partnership-level proceeding to make factual findings pertaining to the imposition of penalty-interest under 26 U.S.C. § 6621, and we remand for the Tax Court to make such findings. Each party shall bear its own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.