FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LOAD, INC.; COAD, INC.,<br>　　　　　　*Petitioners,*<br><br>　　　　　v.<br><br>COMMISSIONER OF INTERNAL<br>REVENUE,<br>　　　　　　*Respondent.* | No. 07-72564<br><br>D.C. No.<br>CIR-1 : 7287-02<br><br>ORDER<br>AMENDING<br>OPINION AND<br>AMENDED<br>OPINION |

Appeal from a Decision of the
United States Tax Court
Stephen J. Swift, Judge, Presiding

Argued and Submitted
January 14, 2009—San Francisco, California

Filed February 2, 2009
Amended March 4, 2009

Before: Myron H. Bright,* Procter Hug, Jr., and
Stephen Reinhardt, Circuit Judges.

Per Curiam Opinion

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

John F. Daniels, Janice Procter-Murphy, Alexander Arpad, Phoenix, Arizona, for the petitioners.

Richard T. Morrison, Acting Assistant Attorney General, Teresa E. McLaughlin, Kathleen E. Lyon, Washington, D.C., for the respondent.

## ORDER

The Opinion filed February 2, 2009 and appearing at 2009 WL 225332 (C.A. 9) is amended as follows:

1.   Following the first sentence in the third full paragraph, insert the sentence "The Tax Court opinion is attached as an appendix."

2. The Tax Court opinion, *LOAD, Inc. v. Comm'r*, 93 T.C.M. (CCH) 969 (2007), in its entirety, is attached to this opinion as an appendix.

## OPINION

PER CURIAM:

Appellants LOAD, Inc. and COAD, Inc.[1] challenge the Tax Court's determination of a federal income tax deficiency for the tax year ending September 30, 2000. The Tax Court held that certain of ADI's expenses were not deductible as ordinary and necessary business expenses under 26 U.S.C. § 162(a) and must be capitalized as inventory costs under 26 U.S.C. § 263A.

We review the Tax Court's findings of fact for clear error and its conclusions of law de novo. *Kelley v. Comm'r*, 45 F.3d 348, 350 (9th Cir. 1995). Our exclusive jurisdiction to review a final decision of the Tax Court arises under 26 U.S.C. § 7482.

The Tax Court wrote an extensive opinion on this matter. *See LOAD, Inc. v. Comm'r*, 93 T.C.M. (CCH) 969 (2007). The Tax Court opinion is attached as an appendix. We approve and adopt that opinion as governing this case.

Accordingly, we affirm.

---

[1]Although only LOAD and COAD are parties to this petition for review, Associated Dealers, Inc. and 12 other affiliated companies have raised similar arguments and agree to be bound by the final outcome of this litigation. We refer to LOAD, COAD, Associated Dealers, Inc., and the 12 other affiliated companies as "ADI."

APPENDIX

T.C. Memo. 2007-51, 2007 WL 675950 (U.S.Tax Ct.), 93 T.C.M. (CCH) 969, T.C.M. (RIA) 2007-051, 2007 RIA TC Memo 2007-051

United States Tax Court.

LOAD, Inc., Petitioner
v.
COMMISSIONER OF INTERNAL REVENUE,
Respondent.
COAD, Inc., Petitioner
v.
Commissioner of Internal Revenue, Respondent.

Nos. 7287-02, 7294-02.

March 6, 2007.

**Background:** Taxpayers, sister companies engaged in buying and selling manufactured homes, petitioned for redetermination of deficiencies arising from disallowance of business expense deductions.

**Holdings:** The Tax Court, Swift, J., held that:

(1) costs associated with placing model homes on retail sales lots were outside "on-site storage facility" exception to inventory rule, and

(2) same costs were also outside "marketing, selling, advertising, and distribution" exception to inventory rule.

Decision for IRS.

## MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, Judge.

*1 Respondent determined deficiencies in petitioners' Federal income taxes for their separate taxable years ending September 30, 2000, as follows:

| Petitioner | Deficiency |
|------------|------------|
| LOAD, Inc. | $16,589 |
| COAD, Inc. | $23,954 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

The issue for decision is whether certain costs relating to manufactured homes that petitioners owned and placed on retail sales lots in order to assist local independent salespersons in the sale of manufactured homes may be currently deducted under section 162 as ordinary and necessary business expenses or whether they should be included under section 263A in petitioners' inventory costs relating to the manufactured homes.

Petitioners and 18 other related corporations are either subsidiaries of, or sister corporations to, Associated Dealers, Inc. (ADI), a Nevada corporation.

ADI and 12 of ADI's related corporations also have filed petitions with the Court relating to the same expense versus inventory issue that is involved herein,[FN1] and respondent, ADI, and the other related petitioners have agreed to be bound by the final outcome of this issue in these two consolidated cases.

Hereinafter, we generally use the acronym ADI indiscriminately to refer to petitioners, to ADI, and to the ADI-related corporations.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petitions were filed, both petitioners' principal places of business were located in Reno, Nevada.

ADI and its related corporations buy and sell manufactured homes in the same manner.

Manufactured homes are constructed at a factory location and are then transported directly to homesites of retail purchasers.

ADI has been selling manufactured homes for more than 30 years, and ADI has become the largest seller of manufactured homes in Arizona and one of the largest sellers of manufactured homes in the Southwestern United States. In recent years, ADI has expanded its sales of manufactured homes to 192 locations in 22 states.

From the 1970s through the late 1990s, ADI purchased completed manufactured homes from unrelated manufacturers and sold the manufactured homes directly to retail customers using individual salespersons who worked for ADI as employees.

In the late 1990s, however, as a result of a significant decline in business and excessive costs such as employee wages and commissions, a number of manufacturers of manufactured homes closed factories, and many sellers of manufactured homes went out of business.

To adjust to the changing market conditions and to reduce costs, in approximately 1999 ADI adopted a revised business plan and restructured its sales operation. Under ADI's revised business plan, ADI's salespersons are given a more active role

in the sales activities and act as independent contractors vis-a-vis ADI.**FN2**

*2 Under the agreements ADI enters into with the independent salespersons, ADI purchases from manufacturers a number of model manufactured homes and places the model manufactured homes on retail sales lots that ADI leases for the purpose of displaying the manufactured homes to the public and to potential retail customers.

The retail sales lots that ADI leases generally are located in prominent, high traffic areas-either the same sales lots ADI had leased and used in prior years or new sales lots. These lots are not leased by ADI as storage lots, but rather the lots are leased by ADI as sales lots for the sale of manufactured homes.

ADI places the model manufactured homes on the sales lots to attract public attention, to provide an opportunity for interested retail customers to inspect the types of manufactured homes that are available for purchase, and in order that the independent salespersons have manufactured homes on the sales lots to show to customers.

On any one sales lot, ADI generally places on display six to seven model manufactured homes that ADI has purchased from manufacturers, each with different features and floor plan.

During their inspection of ADI model manufactured homes, retail customers generally are accompanied by one of the independent salespersons who has contracted with ADI. The independent salespersons discuss with customers the advantages of manufactured homes, the various features of the model homes that are on display and that can be custom ordered, and they seek to convince the customers to purchase a manufactured home.

Once a retail customer decides to purchase a manufactured home, the customer and the independent salesperson fill out a written purchase agreement and bill of sale on which they indicate which floor plan, appliances, and other features and colors are to be included in the particular manufactured home that is being purchased. On the purchase agreement and bill of sale, the customer is shown as purchasing the manufactured home from the independent salesperson. The independent salesperson then submits to ADI the customer's purchase agreement and bill of sale.

The retail selling prices of the manufactured homes appear to range from approximately $30,000 to more than $115,000.

Upon receipt by ADI of a customer's purchase agreement and upon approval of the customer's financing, if any, ADI forwards its own written purchase order to the specified manufacturer for construction of the manufactured home that has been ordered.

Upon completion of the manufactured home-generally within 2 to 3 weeks-the manufactured home is shipped directly by the manufacturer to the retail customer's homesite for installation and occupancy.

If a customer's homesite is not ready for delivery (e.g., if the occupancy permit has not been issued or if the utility hookups for the home have not been completed), the completed manufactured home may be delivered to one of ADI's nearby sales lots until the customer's homesite is ready for installation of the manufactured home. In this latter situation, the length of time the completed and sold manufactured home remains on ADI's sales lots varies from a few days to several months depending on how long it takes for the customer's homesite to be completed.

*3 Under the written contracts that are entered into (between ADI and the manufacturers, between the indepen-

dent salespersons and ADI, and between retail customers and the independent salespersons), upon completion the manufactured homes are sold by the manufacturers to ADI, by ADI to the independent salespersons, and by the independent salespersons to the retail customers.

Of manufactured homes sold by ADI, approximately 90 percent are custom ordered by retail customers based on the decisions and selections customers make in their discussions and negotiations with the independent salespersons and while inspecting ADI's model manufactured homes on the sales lots.

Approximately 10 percent of the manufactured homes sold by ADI consist of the model manufactured homes that are purchased by retail customers right off of the sales lots, after negotiating with the independent salespersons.

ADI sells the manufactured homes to the independent salespersons for the same wholesale price which ADI pays the manufacturers for the manufactured homes. The independent salespersons set the price markup at which the manufactured homes are sold to retail customers, subject of course to negotiations with the customers.

Generally, title to manufactured homes that are custom ordered by retail customers and that are shipped directly to the customers' homesites is held by ADI and by the independent salespersons only briefly. The record is not clear as to exactly when title passes and as to who has title to the manufactured homes during the delivery process.

During the time they are located on the sales lots that ADI leases, model manufactured homes are owned by and titled to ADI.

The independent salespersons, not ADI, are responsible for local media advertising costs, wages, if any, paid to sales

assistants, sales commissions, sales taxes, and utility fees and insurance premiums on the sales lot.

As indicated, ADI enters into the sales lot lease agreements with owners of the real property, and ADI, not the independent salespersons, makes the lease payments due on these leases.

Also, ADI pays some miscellaneous costs relating to the model manufactured homes that are placed on the sales lots.

For the majority of its income relating to the purchase and sale of manufactured homes, ADI receives various incentive payments from the manufacturers and from lenders (e.g., on each manufactured home sold ADI might receive a cash incentive payment from the manufacturer of 10 percent of the total purchase price paid to the manufacturer). Incentive payments that ADI receives are referred to in the record as "retail" incentives, and it appears that these payments represent incentives typically given by manufacturers and lenders to retail sellers of manufactured homes.

ADI also receives from the independent salespersons a $300 processing fee for each manufactured home sold.

The independent salespersons do not receive wages, salary, sales commissions, or other fees or incentives from ADI or from the manufacturers or lenders relating to manufactured homes that are sold. Rather, for their income the independent salespersons retain 100 percent of the retail price markup from the manufacturer's wholesale price.

*4 In the written agreements ADI enters into with the independent salespersons, the independent salespersons expressly give up their right to receive any of the manufacturers' retail incentive payments and acknowledge that ADI is to receive all incentive payments.

On petitioners' timely filed corporate Federal income tax returns for their tax year ending September 30, 2000, petitioners deducted, among other things, as section 162 ordinary and necessary business expenses $243,350 in sales lot lease payments and $22,387 in miscellaneous expenses incurred during the year. The $22,387 miscellaneous expenses consist of $16,184 ADI paid to ship model manufactured homes from closed sales lots to other sales lots, $3,423 ADI paid to avoid a sheriff's seizure relating to delinquent State taxes a former independent salesperson had not paid, $2,500 ADI paid for repairs on a model manufactured home, and $280 ADI paid for cleaning a water-damaged carpet in a model manufactured home.

On audit, respondent determined that the above costs were not currently deductible by petitioners under section 162 as ordinary and necessary business expenses but instead should be included under section 263A in petitioners' inventory costs of the manufactured homes.

## OPINION

Generally, under section 263A(a) and (b), indirect costs allocable to inventory acquired for resale are not currently deductible and are to be included in inventory.[FN3]

Regulations promulgated under section 263A expressly include transportation, rent, taxes, and repair and maintenance costs relating to property held for resale as examples of indirect costs to be included in inventory. Sec. 1.263A-1(e)(3)(ii)(G), (K), (L), (O), Income Tax Regs.

Also, costs associated with storing property held for resale generally are to be included in inventory. Sec. 1.263A1 (e)(3)(ii)(H), Income Tax Regs.

However, under section 1.263A-1(e)(3)(iii)(I), Income Tax Regs., storage costs relating to inventory which are incurred

by a taxpayer at an "on-site storage facility" are excepted from inclusion in inventory.

An on-site storage facility is defined in the regulations as a storage facility that is physically attached to and that is an integral part of a "retail sales facility". Sec. 1.263A3 (c)(5)(ii)(A), Income Tax Regs.

A "retail sales facility" is further defined as the location at which merchandise is sold "exclusively to retail customers in on-site sales". Sec. 1.263A-3(c)(5)(ii)(B)(1), Income Tax Regs.

With an exception not here relevant, a retail customer is defined as the final purchaser of merchandise and does not include a person who resells the merchandise to others. Sec. 1.263A-3(c)(5)(ii)(E)(1), Income Tax Regs.

If a storage facility does not meet the above definition of an on-site storage facility, it is considered an "off-site storage facility," and storage costs relating to property held for resale are to be included in the taxpayer's inventory. Sec. 1.263A-3(c)(5)(ii)(F), Income Tax Regs.

*5 Under section 1.263A-1(e)(3)(iii)(A), Income Tax Regs., another exception is provided to the inventory requirement of section 263A for "marketing, selling, advertising, and distribution costs" relating to property held for resale.

ADI argues that the costs in question qualify as marketing, selling, or distribution costs of property held for resale that are excepted from inventory and, alternatively, that by virtue of its ownership and placement of model manufactured homes on the retail sales lots ADI participates directly in the sales of the manufactured homes to retail customers, and therefore that ADI's leased sales lots should be treated as "on-site" storage facilities and the various costs in dispute should be treated as on-site storage costs that are excepted from inventory.

Respondent argues that for ADI the costs in question do not constitute deductible marketing, selling, or distribution costs, and that (assuming the lot lease payments may be treated as storage costs) the lot lease payments do not constitute "on-site" storage costs because the manufactured homes are sold by ADI to the independent salespersons and not "exclusively" to retail customers.

We first address ADI's alternative argument. As noted, the applicable regulations relating to on-site storage costs expressly state that to be excepted from inventory treatment on-site storage costs must relate to property sold by a taxpayer "exclusively" to retail customers. Sec. 1.263A-3(c)(5)(ii)(B), Income Tax Regs.

On the record before us and although ownership of the manufactured homes by the independent salespersons appears to be brief and rather transitory, we are not prepared to over-look the role of the independent salespersons who clearly have a significant role in the sales of the manufactured homes to retail customers and who, at some point and for a period of time not established in the record, actually take title to the manufactured homes.

We conclude that although ADI participates in the sale of the manufactured homes to the retail customers, ADI does not sell the manufactured homes exclusively to the retail custom-ers (i.e., ADI's sale and title transfer occurs from ADI to the independent salespersons). Accordingly, the costs in question do not qualify for the section 1.263A-1(e)(3)(iii)(I), Income Tax Regs. exception from inventory for on-site storage costs.

Further, we reject ADI's attempt to recharacterize the costs in question as deductible marketing, selling, or distribution costs that would be excepted from inventory under section 1.263A1(e)(3)(iii)(A), Income Tax Regs.

The evidence establishes that the $243,350 in question con-stitutes lot lease payments, the $16,684 in question constitutes

transportation costs, the $3,423 in question constitutes State taxes, the $2,500 in question constitutes repair expenses, and the $280 in question constitutes maintenance costs, all specifically required to be included in inventory under section 1 .263A-1(e)(3)(ii)(G), (K), (L) and (O), Income Tax Regs. None of the expenses in question constitutes a marketing or distribution expense, and none is currently deductible as an ordinary and necessary business expense under section 162.

*6 To reflect the foregoing,

*Decisions will be entered for respondent.*

FN1. The related docket numbers are: 7283-02, 7284-02, 7285-02, 7286-02, 7288-02, 7289-02, 7290-02, 7291-02, 7292-02, 7293-02, 7295-02, 7296-02, and 7297-02.

FN2. The independent salespersons who contract with ADI generally incorporate their individual sales activities. For purposes of our opinion, however, we refer only to the independent salespersons, not to their corporations.

FN3. Although residential homes constructed on-site for resale generally are not treated as inventory and costs associated therewith are to be capitalized under sec. 263A(a)(1)(B), manufactured homes, as long as they have not become fixtures to real property, are treated as personal property, and costs associated therewith are subject to inventory treatment under sec. 263A(a)(1)(A). See, e.g., *Murray v. Zerbel,* 159 Ariz. 99, 764 P.2d 1158, 1161 (Ariz.Ct.App.1988).