141 T.C. No. 13

UNITED STATES TAX COURT

CITY LINE CANDY & TOBACCO CORP., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31303-08.                    Filed November 19, 2013.

P, a corporation, is a reseller and licensed wholesale dealer of cigarettes in New York. New York law provides that all cigarettes possessed for sale must bear a stamp issued by the New York tax commissioner. N.Y. Tax Law sec. 471(1) (McKinney 2006 & Supp. 2013). Pursuant to this law, P, a licensed cigarette stamping agent for New York, purchases cigarette packs for sale, purchases and affixes cigarette tax stamps to those cigarette packs, and sells the stamped cigarette packs to subjobbers and retailers in New York City and throughout New York State. Under New York law, P is required to include, and did include, the cost of the cigarette tax stamps in the sale price of the cigarettes.

P uses the accrual method of accounting and a fiscal year ending Oct. 31. For all relevant years P computed its gross receipts from cigarette sales for financial statement purposes by totaling the gross sale prices of the cigarettes sold during each year. However, for income tax reporting purposes P adjusted its gross receipts from

cigarette sales by subtracting the approximate cost of cigarette tax stamps purchased during the fiscal year and reporting as its gross receipts the resulting net amount. P argued that its average annual gross receipts (determined for income tax reporting purposes) for the three-taxable-year period ending with the taxable year preceding each of the years in issue did not exceed $10 million. P contends that it therefore qualifies for the small reseller exception under I.R.C. sec. 263A(b)(2)(B) for each of the years in issue and consequently is not required to comply with the uniform capitalization (UNICAP) rules of I.R.C. sec. 263A with respect to the cigarettes it acquired for resale.

Held: R correctly determined P's gross receipts for each of the years in issue on the basis of the entire sale price of the cigarettes it sold, including that part of the sale price attributable to the cost of the cigarette tax stamps.

Held, further, P is subject to the UNICAP rules of I.R.C. sec. 263A because P failed to prove that its average annual gross receipts for the three-taxable-year period ending with the taxable year preceding each of the years in issue, correctly calculated to include the entire sale price of the cigarettes it sold, did not exceed $10 million for any of the years in issue.

Held, further, the cigarette tax stamp costs are indirect costs that must be capitalized under the UNICAP rules.

Held, further, the cigarette tax stamp costs are handling costs that R properly allocated, in part, to P's ending inventory using the simplified resale method.

Felipe E. Orner, for petitioner.

Mimi M. Wong, for respondent.

MARVEL, Judge:  In a notice of deficiency respondent determined deficiencies in petitioner's Federal income tax of $96,908 and $9,901 for the taxable years ending (TYE) October 31, 2004 and 2006, respectively.[1]  After concessions,[2] the issues for decision are:  (1) whether petitioner qualifies for the small reseller exception to the uniform capitalization (UNICAP) rules of section 263A;[3] if not, (2) whether the New York cigarette stamp tax petitioner incurred is

---

[1]Respondent determined an overpayment of $861 for TYE October 31, 2005.

[2]With the exception of costs related to the cigarette tax stamps, the parties stipulated the allocation of petitioner's costs as follows:

| TYE | Handling & storage | Purchasing | General & admin. | Indirect costs-- nonallocable |
|---|---|---|---|---|
| 10/31/04 | $35,068 | $44,856 | $128,014 | $292,034 |
| 10/31/05 | 28,135 | 36,334 | 116,818 | 254,331 |
| 10/31/06 | 28,019 | 40,064 | 121,354 | 289,856 |

The parties also stipulated adjustments for insurance expenses and for petitioner's "cost of goods sold--purchases" as follows:

| TYE | Insurance expenses | Cost of goods sold-- purchases |
|---|---|---|
| 10/31/04 | $33,164 | $6,362,650 |
| 10/31/05 | 24,557 | 5,852,508 |

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to
(continued...)

an indirect cost that it must capitalize under the UNICAP rules; and, if so, (3) whether respondent properly allocated a portion of that cost to petitioner's ending inventory using the simplified resale method.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulated facts and facts drawn from stipulated exhibits are incorporated herein by this reference. When petitioner filed its petition, its principal place of business was in New York.

I.      Background

New York law imposes a tax on all cigarettes possessed for sale. N.Y. Tax Law sec. 471(1) (McKinney 2006 & Supp. 2013). That tax is collected through the sale of cigarette tax stamps issued by the New York tax commissioner under a provision that requires that all cigarettes possessed for sale must bear such a stamp. Id. For the relevant tax years, New York State and New York City each imposed a cigarette stamp tax of $1.50 per pack, or $15 per carton.

As part of its cigarette tax collection efforts the New York State Department of Taxation and Finance licenses cigarette stamping agents (stamping agents). A stamping agent purchases unstamped cigarettes from tobacco manufacturers and

---

[3](...continued)
the Tax Court Rules of Practice and Procedure. Monetary amounts have been rounded to the nearest dollar.

purchases cigarette tax stamps[4] from either New York State or New York City. The stamping agent affixes the appropriate cigarette tax stamp to each cigarette package in its possession as evidence that the cigarette stamp tax has been paid and then sells the stamped cigarette packages to licensed retailers, subjobbers, or vending machine operators for sale to consumers. The stamping agent must include the cost of the cigarette tax stamp in the sale price of the cigarettes. Id. sec. 471(3).

Petitioner is a corporation engaged in the wholesale trading of tobacco. Petitioner purchases tobacco products from various manufacturers and resells them to subjobbers and retailers in New York State, both in and out of New York City. Petitioner also is a licensed cigarette stamping agent for New York. Petitioner purchased cigarette tax stamps, and thereby paid cigarette stamp taxes, totaling $5,823,394, $4,842,912, and $5,005,152 for TYE October 31, 2004 (2004), October 31, 2005 (2005), and October 31, 2006 (2006), respectively.

II.     Petitioner's Accounting Methods and Financial Statements

For all relevant years petitioner used the accrual method of accounting for income and expenses and the first-in, first-out method of accounting for inventory.

---

[4]During the years in issue cigarette tax stamps were sold in rolls of 30,000. Petitioner purchased a roll of tax stamps from New York State as needed, approximately every three to four days.

Petitioner did not introduce its financial statements for each of the relevant years into evidence. However, the profit and loss statement for 2004 that is in the record confirms that for financial statement purposes petitioner calculated its gross receipts from cigarette sales by totaling the gross sale prices of cigarettes sold without any reduction for the cost of the cigarette tax stamps that was included in the sale prices.

III.    Petitioner's Tax Reporting and the Notice of Deficiency

Petitioner timely filed its Forms 1120, U.S. Corporation Income Tax Return, for 2004-06. Petitioner reported gross receipts of $6,919,789, $6,214,867, and $6,420,823, for 2004, 2005, and 2006, respectively. Petitioner calculated its gross receipts for income tax purposes by subtracting from its gross receipts from cigarette sales the approximate total cost of the cigarette tax stamps it purchased during each year.

Following an examination of petitioner's income tax returns for 2004-06 respondent mailed to petitioner the notice of deficiency for 2004 and 2006. In the notice of deficiency respondent determined that petitioner had underreported its gross receipts for each taxable year in an amount approximately equal to the cost

of the cigarette tax stamps purchased during that taxable year.[5]  Consequently, respondent determined that petitioner had additional gross receipts of $5,823,394, $4,842,912, and $5,005,152 for 2004, 2005, and 2006, respectively.

As a result of the adjustments to petitioner's gross receipts, respondent also determined that petitioner's average annual gross receipts for the three-taxable-year period ending with the taxable year preceding each of 2004-06 exceeded $10 million and therefore it was subject to the UNICAP rules of section 263A.[6]  Under the UNICAP rules, petitioner was required to include a portion of certain direct and indirect costs in inventory costs.  Respondent classified the cigarette tax stamp costs as general and administrative costs and determined that petitioner's indirect

---

[5]The parties stipulated that petitioner "purchased cigarette stamps and paid to New York state cigarette stamp taxes" of $5,823,394, $4,842,912, and $5,005,152 for 2004, 2005, and 2006, respectively.  Under N.Y. Tax Law sec. 472(1) (McKinney 2006 & Supp. 2013), stamping agents may retain a specified percentage of collected cigarette stamp taxes as compensation for their duties.  Neither party addressed whether petitioner included such commissions in calculating its gross receipts or in calculating the cost of cigarette tax stamps it incurred.

[6]Sec. 263A(b)(2)(B) provides that certain taxpayers are excepted from complying with the UNICAP rules "if the average annual gross receipts of the taxpayer (or any predecessor) for the 3-taxable year period ending with the taxable year preceding such taxable year do not exceed $10,000,000."

costs for handling and storage, purchasing, general and administrative, and

indirect costs--nonallocable expenses were as follows:[7]

| TYE | Handling & storage | Purchasing | General & admin. | Indirect costs-- nonallocable |
|---|---|---|---|---|
| 10/31/2004 | $80,251 | $96,951 | $5,959,471 | $186,986 |
| 10/31/2005 | 65,038 | 81,090 | 4,962,092 | 151,246 |
| 10/31/2006 | 79,740 | 100,970 | 5,143,209 | 205,756 |

Using the simplified resale method without historic absorption (simplified resale

method), respondent determined that petitioner had additional section 263A

capitalizable costs for 2004, 2005, and 2006 of $6,282, $3,963, and $6,268,

respectively. Respondent calculated the additional section 263A capitalizable

costs as the product of the combined absorption ratio and petitioner's purported

section 471 costs[8] at the end of the year.[9]

_____

[7]In the notice of deficiency respondent determined that the cigarette tax stamp costs were general and administrative costs and referenced sec. 1.263A-1(e)(4)(i)(A), Income Tax Regs., which defines service costs as "indirect costs (e.g., general and administrative costs) that can be identified specifically with a service department or function or that directly benefit or are incurred by reason of a service department or function."

[8]Respondent calculated petitioner's sec. 471 costs as $246,304, $186,921, and $239,823 for 2004, 2005, and 2006, respectively. Respondent appears to have calculated petitioner's sec. 471 costs as the sum of: (1) storage and handling costs; (2) purchasing costs; and (3) the product of petitioner's general and administrative costs and the storage and handling cost absorption ratio for the relevant year. However, in calculating the storage and handling cost absorption

(continued...)

In the notice of deficiency respondent further determined that petitioner

_____

[8](...continued)
ratio for each year, respondent used a value in the numerator that differed from petitioner's total storage and handling costs for the year. Respondent likewise used a value in the numerator of the purchasing cost absorption ratio that differed from petitioner's total purchasing costs for the year.

Respondent has not adequately explained, either in the notice of deficiency or in his posttrial briefing, how he came up with the numbers used in the calculations attached to the notice of deficiency. It appears to the Court that respondent made mistakes in adjusting petitioner's inventory in the notice of deficiency, and he appears to have conceded as much. However, on brief respondent appears to be equivocating on his position regarding mistakes in the calculations attached to the notice of deficiency. We expect respondent in his Rule 155 computation to explain each of the values used and to identify clearly how he made the computation of any deficiencies resulting from this Opinion.

[9]After filing a petition with this Court petitioner filed an appeal with the Internal Revenue Service Appeals Office. Appeals Officer Marco Minervini (AO Minervini) prepared a number of spreadsheets purporting to calculate petitioner's inventory costs under the UNICAP rules. AO Minervini allocated petitioner's handling and storage, purchasing, and general and administrative costs using the values stipulated, see supra note 2, rather than using the values in the notice of deficiency. In the first spreadsheet AO Minervini determined that 100% of the cigarette tax stamp costs were indirect costs not allocable to handling and storage, purchasing, or general and administrative costs, and calculated that petitioner had additional sec. 263A capitalizable costs for 2004, 2005, and 2006 of $1,376, $1,809, and $2,228, respectively. In the second spreadsheet AO Minervini allocated 50% of the cigarette tax stamp costs to handling costs and 50% to indirect costs not allocable to handling and storage, purchasing, or general and administrative costs and calculated that petitioner had additional sec. 263A capitalizable costs for 2004, 2005, and 2006 of $53,423, $71,836, and $85,796, respectively. In both spreadsheets AO Minervini used a value for petitioner's sec. 471 costs for the year that was equal to its ending inventory for that year as reported on its return.

must increase its inventory costs for 2004, 2005, and 2006 by $252,586, $190,884, and $246,091, respectively.  Respondent arrived at these additional amounts by adding the additional section 263A costs for each year and petitioner's purported section 471 costs for each year.  Respondent then added the amount of the increase to petitioner's ending inventory to calculate its adjusted ending inventory for each of the taxable years in issue.[10]

OPINION

I.    Burden of Proof

Ordinarily, the Commissioner's determinations in a notice of deficiency are presumed correct and the taxpayer bears the burden of proving that they are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, the burden of proof will shift to the Commissioner if the taxpayer proves that the determinations are arbitrary, capricious, or unreasonable.  Paccar, Inc. v. Commissioner, 85 T.C. 754, 787 (1985), aff'd, 849 F.2d 393 (9th Cir. 1988).  Concessions by the Commissioner at or during the course of trial ordinarily are insufficient to shift the burden of proof to the Commissioner.  Gobins v.

---

[10]In his spreadsheets AO Minervini determined that petitioner must increase its inventory costs for 2004, 2005, and 2006 by the amounts of additional sec. 263A capitalizable costs, described supra note 9.  In calculating petitioner's adjusted ending inventory AO Minervini added the additional sec. 263A capitalizable costs to its ending inventory value for each year.

Commissioner, 18 T.C. 1159, 1168-1169 (1952), aff'd per curiam, 217 F.2d 952 (9th Cir. 1954); see also Engles Coin Shop, Inc. v. Commissioner, T.C. Memo. 1983-561.

Petitioner appears to argue that the determinations in the notice of deficiency are arbitrary, capricious, or unreasonable and therefore the burden of proof is on respondent. Petitioner relies on the fact that during these proceedings respondent stipulated an allocation of handling and storage, purchasing, and general and administrative costs different from the allocation in the notice of deficiency.[11]

The mere fact that respondent stipulated an alternative cost allocation is insufficient to shift the burden of proof to him. While it appears that in the notice of deficiency respondent may have made some mistakes in calculating the required adjustments under section 263A, those mistakes are not sufficient to support a finding that his determinations regarding petitioner's gross receipts and its

---

[11]Petitioner also contends that the determinations in the notice of deficiency are arbitrary, capricious, or unreasonable because respondent used an incorrect methodology in calculating its inventory costs under sec. 263A. However, the parties stipulated that in the notice of deficiency respondent applied the simplified resale method without historic absorption, a method expressly permitted under sec. 263A.

obligation to adhere to the rules of section 263A were arbitrary, capricious, or unreasonable.

We conclude that petitioner bears the burden of proving that respondent's determinations are incorrect. See Rule 142(a).[12]

II.     Application of Section 263A

A.     Introduction to Section 263A

Congress enacted section 263A as part of the Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 803(a), 100 Stat. at 2350. In enacting section 263A, Congress intended that a single, comprehensive set of rules should govern capitalization of the costs of producing, acquiring, and holding property for resale to more accurately reflect income and create a more neutral tax system. See Suzy's Zoo v. Commissioner, 273 F.3d 875, 879 (9th Cir. 2001), aff'g 114 T.C. 1 (2000); S. Rept. No. 99-313, at 140 (1986), 1986-3 C.B. (Vol. 3) 1, 140. Whether an

---

[12]Under sec. 7491(a) the burden of proof shifts to the Commissioner if the taxpayer produced credible evidence to support the deduction or position, the taxpayer complied with the substantiation requirements, and the taxpayer cooperated with the Secretary with regard to all reasonable requests for information. Petitioner does not contend that sec. 7491(a) applies, and it has not introduced evidence to prove it satisfied the requirements of sec. 7491(a).

expenditure is deductible[13] or must be capitalized is a question of fact.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 86 (1992).

Under section 263A a taxpayer must capitalize certain direct and indirect costs allocable to real or personal property that the taxpayer has acquired for resale.  See also sec. 1.263A-3(a)(1), Income Tax Regs.  If the resale property is inventory in the taxpayer's hands, the taxpayer must include the direct and indirect costs in inventory costs.  Sec. 263A(a)(1)(A).  Direct costs include "the acquisition costs of property acquired for resale."  Sec. 1.263A-1(e)(2)(ii), Income Tax Regs.  Indirect costs include all costs, other than direct costs, properly allocable to property acquired for resale.  Sec. 1.263A-1(e)(3)(i), Income Tax Regs.

B.     The Small Reseller Exception

Under section 263A(b)(2)(B) a taxpayer is excepted from complying with the UNICAP rules of section 263A with respect to certain property acquired for resale "if the average annual gross receipts of the taxpayer (or any predecessor) for the three-taxable-year period ending with the taxable year preceding such taxable

---

[13]Sec. 162(a) authorizes a taxpayer to deduct ordinary and necessary business expenses paid or incurred during the taxable year in carrying on the taxpayer's trade or business.  Advertising and other selling expenses are deductible under sec. 162(a).  See sec. 1.162-1(a), Income Tax Regs.  However, no deduction is available for items used by the taxpayer in computing the cost of inventory property.  See id.

year do not exceed $10,000,000" (small reseller exception).[14] A reseller is a

taxpayer who acquires for resale (1) property the taxpayer includes in inventory if

on hand at the end of the year, and (2) property the taxpayer holds primarily for

sale to customers in the ordinary course of business. See sec. 1.263A-3(a)(1),

Income Tax Regs.

### 1. Parties' Arguments

Petitioner contends that it qualifies for the small reseller exception because

its average annual gross receipts for each of the years in issue did not exceed $10

million.[15] According to petitioner, respondent erred by including in its gross

---

[14]Two types of resellers must satisfy additional requirements to qualify for the small reseller exception. If the reseller produces property, the reseller qualifies for the exception only if the reseller meets the gross receipts test, see sec. 263A(b)(2)(B), and the reseller's production activities are de minimis, see sec. 1.263A-3(a)(2)(ii) and (iii), Income Tax Regs. If the reseller is treated as producing property because property is produced under contract for the reseller, the reseller qualifies for the exception only if the reseller meets the gross receipts test, see sec. 263A(b)(2)(B), and "if the contract is entered into incident to the resale activities of the small reseller and the property is sold to its customers", see sec. 1.263A-3(a)(3), Income Tax Regs.; see also Suzy's Zoo v. Commissioner, 273 F.3d 875, 880-881 (9th Cir. 2001), aff'g 114 T.C. 1 (2000).

[15]Petitioner also contends that it qualifies for the small reseller exception because it is a small reseller with de minimis production activity. An analysis of whether a reseller has de minimis production activity is relevant only if the reseller satisfies the gross receipts test of sec. 263A(b)(2)(B). If the reseller produces property, the reseller is excepted from complying with the UNICAP rules only if the reseller satisfies the gross receipts test and the de minimis production activity

(continued...)

receipts proceeds attributable to collection of the New York cigarette stamp tax.

Petitioner contends that New York law imposes the cigarette stamp tax on

consumers, not stamping agents or wholesalers; therefore, gross receipts do not

include proceeds attributable to collection of the cigarette stamp tax. Petitioner

further contends that if in calculating its gross receipts for Federal income tax

purposes it properly subtracted the cost of the cigarette tax stamps it purchased,

then respondent's determinations that petitioner underreported its gross receipts

and that petitioner is subject to the UNICAP rules of section 263A are erroneous

because petitioner's average annual gross receipts did not exceed the $10 million

threshold for the relevant years.

Respondent contends that petitioner does not qualify for the small reseller

exception. Respondent explains that because New York law requires petitioner to

add the cost of the cigarette tax stamps to the cigarette sale price, it must include

in gross receipts the entire gross sale price, including that part of its gross sale

price approximately equal to the cost of cigarette tax stamps it incurred during

each taxable year. Respondent asserts that after petitioner's gross receipts are

---

[15](...continued)
requirement. Sec. 1.263A-3(a)(2)(ii) and (iii), Income Tax Regs.; see also Suzy's Zoo v. Commissioner, 273 F.3d at 880-881. Because we find that petitioner's average annual gross receipts for the relevant periods exceeded $10 million, we need not decide whether its production activity was de minimis.

reconstructed, its average annual gross receipts for the relevant testing periods for each year in issue exceed $10 million.

Accordingly, we first must decide whether for purposes of determining qualification for the small reseller exception, petitioner's gross receipts should include the cost of the cigarette tax stamps it purchased during each taxable year.

### 2. Calculation of Petitioner's Gross Receipts Under Section 263A(b)(2)(B)

For purposes of the small reseller exception, section 1.263A-3(b)(2)(i), Income Tax Regs., defines gross receipts as "the total amount, as determined under the taxpayer's method of accounting, derived from all of the taxpayer's trades or businesses (e.g., revenues derived from the sale of inventory before reduction for cost of goods sold)."[16] Section 1.263A-3(b)(2)(ii), Income Tax Regs., however, excludes certain items from the definition of gross receipts for purposes of the small reseller exception:

> (ii) Amounts excluded. * * * gross receipts do not include amounts representing--
>
> (A) Returns or allowances;

---

[16]This calculation is consistent with the calculation of gross income in sec. 1.61-3(a), Income Tax Regs. (gross income derived from a business is "the total sales, less the cost of goods sold").

(B) Interest, dividends, rents, royalties, or annuities, not derived in the ordinary course of a trade or business;

(C) Receipts from the sale or exchange of capital assets, as defined in section 1221;

(D) Repayments of loans or similar instruments * * *;

(E) Receipts from a sale or exchange not in the ordinary course of business * * *, and

(F) Receipts from any activity other than a trade or business or an activity engaged in for profit.

By reason of the above, calculating petitioner's gross receipts for purposes of the small reseller exception requires a two-step inquiry: (1) whether, under its accrual method of accounting, petitioner's gross receipts for each taxable year in issue included the entire sale price of the cigarettes it sold, including the amount attributable to cigarette tax stamps it purchased during the year; and, if we answer the first inquiry in the affirmative, (2) whether section 1.263A-3(b)(2)(ii), Income Tax Regs., excludes from gross receipts the approximate cost of cigarette tax stamps purchased during each year.

### a. Petitioner's Method of Accounting

Petitioner used the accrual method of accounting for the years in issue. Under the accrual method of accounting, a taxpayer must recognize income for the

year in which the taxpayer accrues the income. See, e.g., sec. 451(a). A taxpayer accrues income when the all-events test has been met, meaning that the taxpayer's right to the income is fixed and the taxpayer can determine the amount of the income with reasonable accuracy. Sec. 1.451-1(a), Income Tax Regs.

The only financial statement that petitioner introduced was its 2004 "Profit and Loss" statement, which shows total sales of $12,767,183. We infer from the profit and loss statement that petitioner determined its total sales under its accrual method of accounting for financial accounting purposes by totaling its gross receipts from cigarette sales during the taxable year without any reduction for the cost of cigarette tax stamps purchased during that year. Petitioner then deducted cost of goods sold, including the cost of the cigarette tax stamps, from its gross receipts to arrive at gross profit before expenses.[17]

In contrast, petitioner calculated its gross receipts for income tax reporting purposes by subtracting from its gross receipts from cigarette sales the approximate cost of cigarette tax stamps purchased during the fiscal year and reporting as its gross receipts the resulting net amount. Mr. Kun Sang Ruy, one of

---

[17]Petitioner did not introduce into evidence financial statements for any other taxable years. In the absence of any proof to the contrary, we infer from the profit and loss statement in the record that petitioner calculated its gross receipts for the other years in issue in a manner similar to that used on the profit and loss statement for 2004.

petitioner's shareholders, testified that the amount reported as gross receipts on its tax returns reflected a "net" amount.

For tax and financial accounting purposes a taxpayer must first calculate total sales revenue determined in accordance with its method of accounting. For financial accounting purposes petitioner did just that. For income tax reporting purposes, however, petitioner reduced its total gross receipts from cigarette sales by the cost of the cigarette tax stamps it purchased during the taxable year to arrive at a gross receipts figure that was substantially lower than the figure used for financial accounting purposes.

Petitioner's profit and loss statement for 2004 confirms that under its accrual method of accounting it included all of the gross receipts generated by its sale of cigarettes during the taxable year, including gross receipts attributable to the cigarette tax stamps affixed to the cigarette packs before sale, in calculating its gross receipts from cigarette sales. This approach is consistent with New York law, which requires a stamping agent to include the cost of the cigarette tax stamp in the sale price of the cigarettes. See N.Y. Tax Law sec. 471(3). Petitioner's efforts to show that it qualified as a small reseller by reducing its gross receipts for each taxable year in an amount approximately equal to the cost of cigarette tax stamps it purchased during the year were inconsistent with its accrual method of

accounting and with applicable New York law. Consequently, we find that the small reseller exception does not apply because gross receipts for each taxable year in issue should not be reduced by an amount representing the cost of cigarette tax stamps purchased during that year.

b. Whether the Cost of Cigarette Tax Stamps Is a Tax Properly Excluded From Gross Receipts

Although petitioner's arguments are not entirely clear, we interpret them to be that for purposes of determining eligibility for the small reseller exception, the cost of the cigarette tax stamps should be subtracted in calculating gross receipts because either: (1) section 1.263A-3(b)(2), Income Tax Regs., permits or requires the subtraction; or (2) sales tax or other similar State and local taxes are subtracted in computing gross receipts if, under applicable State or local law, the tax legally is imposed on the purchaser of the good or service and the taxpayer merely collects and remits the tax to the taxing authority. We address each of these arguments below.

i. Effect of Section 1.263A-3(b)(2) and (3), Income Tax Regs.

In specifying how gross receipts are calculated for purposes of the small reseller exception, section 1.263A-3(b)(2), Income Tax Regs., excludes several enumerated items but makes no reference to taxes. Because taxes are not

specifically listed as an exclusion under section 1.263A-3(b)(2)(ii), Income Tax Regs., the regulation provides no support for petitioner's argument that the regulation requires the cost of the cigarette tax stamps it purchased during the relevant years to be excluded from the calculation of gross receipts for purposes of the small reseller exception.

Petitioner points out that section 263A(b)(2)(C) requires gross receipts to be calculated for purposes of the small reseller exception using rules similar to those of paragraphs (2) and (3) of section 448(c). Respondent disagrees because section 263A(b)(2)(C) provides that the section 448(c) rules apply for aggregation purposes only.

Section 1.263A-3(b)(3), Income Tax Regs., discusses the aggregation of gross receipts for purposes of the small reseller exception. The aggregation concept embodied therein, under which multiple persons treated as a single employer under section 52(a) or (b) or section 414(m) are treated as one taxpayer for purposes of the small reseller exception, simply does not apply because there is only one taxpayer involved in this case. Consequently, we reject petitioner's argument that the aggregation rules of section 1.263A-3(b)(2) and (3), Income Tax Regs., support its calculation of its gross receipts.

ii.    The Character of the New York Cigarette Tax

In its opening brief petitioner addresses the issue of whether the cigarette stamp tax is imposed on the stamping agents, wholesalers, and resellers or on the consumers. Petitioner contends that the tax is imposed on the consumers and therefore is not includable in the calculation of its gross receipts for purposes of the small reseller exception. In his reply brief respondent contends that the tax is imposed on resellers like petitioner.

The parties appear to agree that if the cigarette stamp tax is imposed on consumers, rather than on resellers, then a reseller may exclude from gross receipts the sales proceeds attributable to collection of the tax. However, neither petitioner nor respondent offered any legal authority for such a contention, and we are unable to find any support for it.[18] In any event, New York caselaw acknowledges

---

[18]Two sections of the Code address the taxability of imposed versus collected taxes, although neither party cites either section to support his or its contention. Sec. 164(a) provides that State, local, and foreign taxes are deductible by the person on whom the taxes are imposed. See sec. 1.164-1(a), Income Tax Regs. However, sec. 164(a) addresses only the deductibility of taxes, not whether taxes should be included in gross receipts. Consequently, sec. 164(a) is inapplicable with respect to the issue of whether petitioner must include in gross receipts proceeds attributable to the cigarette tax stamps.

Sec. 448(c) provides that a taxpayer may use the cash method of accounting if the taxpayer has average annual gross receipts of less than $5 million. See sec. 1.448-1T(f)(2)(iv), Temporary Income Tax Regs., 52 Fed. Reg. 22772 (June 16,

(continued...)

that while the consumer bears the ultimate liability for the cigarette stamp tax, the tax is imposed, at least to some degree, on the reseller. Schwartz v. Tax Appeals Tribunal of N.Y., 643 N.Y.S.2d 761 (App. Div. 1996); Mandel Tobacco Co. v. State Tax Comm'n, 397 N.Y.S.2d 23 (App. Div. 1977). We reject petitioner's second argument, and we hold that respondent properly determined petitioner's

_____

[18](...continued)
1987). Sec. 1.448-1T(f)(2)(iv), Temporary Income Tax Regs., supra, adjusts the calculation of gross receipts for purposes of sec. 448 specifically with respect to amounts attributable to the collection of taxes as follows:

> [G]ross receipts do not include amounts received by the taxpayer with respect to sales tax or other similar state and local taxes if, under the applicable state or local law, the tax is legally imposed on the purchaser of the good or service, and the taxpayer merely collects and remits the tax to the taxing authority. If, in contrast, the tax is imposed on the taxpayer under the applicable law, then gross receipts shall include the amounts received that are allocable to the payment of such tax.

Sec. 1.263A-3(b)(2), Income Tax Regs., provides an explicit definition of gross receipts for purposes of the small reseller exception, whereas sec. 448(c) and the regulations promulgated thereunder address the calculation of gross receipts for purposes of determining whether a taxpayer may use the cash method of accounting. Petitioner uses the accrual method of accounting and is not here contending that it should be permitted to use the cash method of accounting. In addition, the definitions of gross receipts in sec. 1.263A-3(b)(2), Income Tax Regs., and sec. 1.448-1T(f)(2)(iv), Temporary Income Tax Regs., supra, are inconsistent and cannot be read together. For example, while sec. 1.448-1T(f)(2)(iv), Temporary Income Tax Regs., supra, provides that a taxpayer must include in gross receipts incidental income not derived in the ordinary course of business, sec. 1.263A-3(b)(2)(ii)(B), Income Tax Regs., excludes such amounts from the gross receipts calculation.

gross receipts for purposes of the small reseller exception using the rules set forth in section 1.263A-3(b)(2)(ii)(B), Income Tax Regs.

### 3. Application of the Small Reseller Exception

The testing period for 2004 includes TYE October 31, 2001, 2002, and 2003. The testing period for 2005 includes TYE October 31, 2002, 2003, and 2004. Petitioner did not introduce any credible evidence to prove the correct amounts of its gross receipts for TYE October 31, 2001 and 2002.

For each of the taxable years in issue petitioner bears the burden of proving that its average gross receipts for the three previous taxable years did not exceed $10 million. Petitioner did not do so. The record does not permit us to calculate petitioner's actual gross receipts for TYE October 31, 2001 and 2002, two of the years in the relevant testing periods. Accordingly, we conclude that petitioner has failed to prove that it met the requirements of the small reseller exception under section 263A(b)(2)(B) for 2004 and 2005.

The testing period for 2006 includes TYE October 31, 2003 (2003), 2004, and 2005. During the testing period petitioner had average annual gross receipts of $12,619,009. Petitioner does not qualify as a small reseller because its average annual gross receipts for the testing period exceeded $10 million.

Because we conclude that respondent correctly calculated petitioner's gross receipts for each taxable year in issue by including the cost of cigarette tax stamps it purchased and included in the cigarette sale price and because petitioner did not prove the amounts of its average annual gross receipts for the testing periods applicable to 2003 and 2004, we find as follows:

| TYE | Gross receipts per return | Cigarette tax stamp costs | Total gross receipts |
| --- | --- | --- | --- |
| 10/31/01 | $9,432,811 | Not in record | Unable to determine |
| 10/31/02 | 8,776,695 | Not in record | Unable to determine |
| 10/31/03 | 7,604,923 | $6,451,143 | $14,056,066 |
| 10/31/04 | 6,919,789 | 5,823,394 | 12,743,183 |
| 10/31/05 | 6,214,867 | 4,842,912 | 11,057,779 |

On the basis of these findings we conclude that petitioner does not qualify for the small reseller exception and that it is subject to the UNICAP rules of section 263A for the taxable years in issue. We therefore must decide whether the cigarette tax stamp costs petitioner incurred are capitalizable costs for purposes of the UNICAP rules and if so, how those costs are characterized and allocated to the cigarettes petitioner acquired for resale.

III. Capitalization of Cigarette Tax Stamp Costs

The UNICAP rules of section 263A require a taxpayer to capitalize the direct and indirect costs of real or personal property that a taxpayer acquires for

resale. Sec. 263A(a), (b)(2)(A). For resellers, direct costs are acquisition costs. Sec. 1.263A-1(e)(2)(ii), Income Tax Regs. Indirect costs are costs allocable to property acquired for resale "when the costs directly benefit or are incurred by reason of the performance of * * * resale activities." Sec. 1.263A-1(e)(3)(i), Income Tax Regs. Capitalizable indirect costs include taxes "otherwise allowable as a deduction to the extent such taxes are attributable to labor, materials, supplies, equipment, land, or facilities" used in resale activities. Sec. 1.263A-1(e)(3)(ii)(L), Income Tax Regs. However, a taxpayer is not required to capitalize certain indirect costs, including "marketing, selling, advertising, and distribution costs."[19] Sec. 1.263A-1(e)(3)(iii)(A), Income Tax Regs.

Neither party argues that the cigarette tax stamp costs are direct costs. Respondent contends that the cigarette tax stamp costs are indirect costs that must be capitalized. Petitioner contends that it is not required to capitalize the cigarette tax stamp costs because they are neither costs that directly benefit or are incurred by reason of its performance of resale activities nor taxes attributable to labor, material, or supplies. Petitioner further contends that the cigarette tax stamp costs are currently deductible selling expenses. Accordingly, we must decide whether

[19]Sec. 1.263A-1(e)(3)(iii)(F), Income Tax Regs., provides that a taxpayer need not capitalize taxes assessed on the basis of income. Because the cigarette stamp tax is not assessed on the basis of income, this provision does not apply.

the cigarette tax stamp costs are indirect costs or currently deductible selling expenses.

A.      Indirect Costs:  General Definition

As noted supra, indirect costs are costs allocable to property acquired for resale "when the costs directly benefit or are incurred by reason of the performance of * * * resale activities."  Sec. 1.263A-1(e)(3)(i), Income Tax Regs. The U.S. Court of Appeals for the Second Circuit, to which an appeal in this case would lie, absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has considered the meaning of the phrases "directly benefit" or "incurred by reason of", Robinson Knife Mfg. Co. v. Commissioner, 600 F.3d 121, 127 (2d Cir. 2010), rev'g T.C. Memo. 2009-9.  At issue in Robinson Knife was the proper tax treatment of royalties paid for the taxpayer's use of trademarks that it placed on kitchen items sold to the public.  The royalties were payable when the kitchen items were sold.  The Court of Appeals held that for a cost to be a capitalizable cost, it "must be a but-for cause of the taxpayer's production activities".  Id. at 131-132.  The taxpayer could have produced the same property, albeit without a trademark, and avoided paying the royalty costs.  Id. at 131.  The Court of Appeals held that the royalty costs were not capitalizable costs because the royalty costs

"were calculated as a percentage of net sales" and "were incurred only upon the sale". Id. at 134.

Article 20 of the New York Tax Law provides that a stamping agent must purchase cigarette tax stamps from the commissioner and affix those stamps to the cigarette packages it possesses for resale. N.Y. Tax Law sec. 471(2). As both a stamping agent and a corporation engaged in the resale of cigarettes, petitioner must purchase the cigarette tax stamps.[20] But for the purchase of the cigarette tax stamps, petitioner could not engage in its business of reselling cigarettes. The cigarette tax stamp costs are incurred by reason of petitioner's resale activity.

Furthermore, the cigarette tax stamp costs differ from the royalty costs in Robinson Knife in two important ways. First, while the taxpayer in Robinson Knife could refuse to pay royalty costs while continuing to produce and sell a substantially similar product, petitioner could not refuse to purchase cigarette tax stamps while continuing to possess cigarettes for resale. Second, unlike the royalty costs in Robinson Knife, the cigarette stamp tax is neither calculated as a percentage of net sales nor incurred only upon the sale of the cigarettes.

_____

[20]While petitioner could argue that its stamping agent activity is separate from its resale activity and therefore the cigarette stamp tax is a cost allocable solely to the stamping agent activity, the record supports a finding that its stamping agent activity was part of its resale activity. Consequently, we find that the stamping agent activity is an indivisible part of petitioner's resale activity.

Under New York law petitioner was required to pay the cigarette stamp tax when it possessed the cigarettes for resale, not upon occurrence of the resale. N.Y. Tax Law sec. 471(1). Petitioner was obligated to purchase the cigarette tax stamps and affix them to the cigarette packages as soon as it purchased and took possession of the cigarettes. The cigarettes could not be sold without a tax stamp affixed to the package. We therefore find that the cigarette tax stamp costs are costs incurred by reason of petitioner's resale activities.

B.    Indirect Costs:  Taxes

Capitalizable indirect costs include taxes "otherwise allowable as a deduction to the extent such taxes are attributable to labor, materials, supplies, equipment, land, or facilities" used in resale activities. Sec. 1.263A-1(e)(3)(ii)(L), Income Tax Regs. A taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on his trade or business. Sec. 162. Capitalizable indirect costs do not include taxes "assessed on the basis of income". Sec. 1.263A-1(e)(3)(iii)(F), Income Tax Regs.

If petitioner did not purchase the cigarette tax stamps and affix them to the cigarette packages, it could not offer the cigarettes for sale. Therefore the cigarette tax stamps are materials and supplies that petitioner uses in its business

of reselling cigarettes.[21]  Furthermore, the cigarette tax stamp costs are otherwise allowable as a deduction under section 162.[22]  But for the operation of the UNICAP rules of section 263A, a taxpayer could deduct the cigarette tax stamp costs as ordinary and necessary business expenses under section 162.

The cigarette stamp tax is not a tax assessed on the basis of the taxpayer's income.  New York State and New York City set the price of the cigarette tax stamps.  Therefore, costs of cigarette tax stamps are capitalizable indirect costs as defined in section 1.263A-1(e)(3)(ii)(L), Income Tax Regs.

### C.    Cost of Cigarette Tax Stamps Not a Selling Expense

A taxpayer need not capitalize certain indirect costs, including "marketing, selling, advertising, and distribution costs."  Sec. 1.263A-1(e)(3)(iii)(A), Income Tax Regs.  While selling expenses are excepted from the UNICAP rules, see id., a taxpayer cannot recharacterize an enumerated capitalizable indirect cost as a

---

[21]Petitioner contends that the cigarette tax stamp costs are not costs attributable to materials, supplies, or labor, because the cigarette stamp tax ultimately is imposed on the consumer.  However, whether the cigarette stamp tax ultimately is imposed on the consumer, the stamping agent, or the wholesaler is irrelevant.  To be a capitalizable indirect cost, the tax must be attributable to materials, supplies, or labor; there is no requirement that the tax be imposed on the reseller.  See sec. 1.263A-1(e)(3)(iii)(A), Income Tax Regs.

[22]While sec. 275 prohibits a taxpayer from deducting certain types of taxes, sec. 275 does not address cigarette stamp taxes.

selling expense, see LOAD, Inc. v. Commissioner, T.C. Memo. 2007-51, aff'd, 559 F.3d 909 (9th Cir. 2009). In LOAD, the taxpayer argued that certain State taxes were marketing, selling, or distribution expenses excepted from section 263A. In rejecting the taxpayer's argument, this Court noted that section 1.263A-1(e)(3)(ii)(L), Income Tax Regs., specifically directed the taxpayer to include such State taxes in capitalizable indirect costs. Id., slip op. at 11-13.

Similarly, in Robinson Knife Mfg. Co. v. Commissioner, 600 F.3d 121, the U.S. Court of Appeals for the Second Circuit held that trademark fees are not selling expenses excepted from the UNICAP rules. The Court of Appeals noted that the enumerated list of indirect costs specifically includes trademark fees. Id. at 129. The trademark fees could not be characterized as selling expenses because an immediate deduction of trademark fees would defeat the purpose of the UNICAP rules to ensure "that trademark royalties are not deducted during a taxable year which precedes the year in which the corresponding trademarked items are sold." Id. at 130.

The cigarette stamp tax is imposed on "all cigarettes possessed in the state by any person for sale". N.Y. Tax Law sec. 471(1). A reseller becomes liable for the cigarette stamp tax when it purchases cigarettes for resale to customers and not when it actually sells the cigarettes to customers. Although the reseller is required

by New York law to include the cost of the cigarette tax stamps in the sale price of the cigarettes, see N.Y. Tax Law sec. 471(3), and effectively is reimbursed for the cigarette stamp tax it paid when the cigarettes are sold, a reseller is not entitled to a refund of the cigarette tax if the cigarettes are not sold, see Schwartz, 643 N.Y.S.2d 761, or if the cigarette tax stamps are stolen before the stamping agent affixes them to the cigarette packages, see Mandel Tobacco Co., 397 N.Y.S.2d 23. Under this legal structure the cigarette stamp tax cannot properly be characterized as a selling expense.[23]

As this Court noted in LOAD, section 1.263A-1(e)(3)(ii)(L), Income Tax Regs., specifically provides that certain taxes are indirect costs that must be capitalized. Under section 1.263A-1(e)(3)(ii)(L), Income Tax Regs., the cigarette tax stamp costs are indirect costs that must be capitalized. Petitioner cannot recharacterize a capitalizable indirect cost as a selling expense.

---

[23]In arguing that cigarette tax stamps are selling expenses, petitioner relies solely on Rev. Rul. 79-196, 1979-1 C.B. 181. Rev. Rul. 79-196, 1979-1 C.B. at 182, states that the cost of goods sold does not include proceeds attributable to the collection of State sales taxes. However, Rev. Rul. 79-196, supra, is inapplicable to this case because: (1) it addresses the deductibility under sec. 164 of State general sales taxes, not cigarette stamp taxes, see sec. 164(b)(5)(B); (2) it addresses installment sale reporting, not inventory reporting; and (3) it was issued before the enactment of sec. 263A.

Finally, petitioner's proposed recharacterization would allow it an immediate deduction for expenses related to future sales. While petitioner typically purchased cigarette tax stamps and sold the stamped cigarettes within a matter of days, it had some cigarettes and cigarette tax stamps remaining at the end of the taxable year. If petitioner deducted the entire cost of the cigarette tax stamps purchased in year 1 but did not sell all of the stamped cigarette packages until year 2, it would deduct costs in year 1 with respect to cigarette inventory that remained unsold at the end of year 1.

Consistent with this analysis, we conclude that the cigarette tax stamp costs are not selling expenses excepted from the UNICAP rules but instead are capitalizable indirect costs. We now must decide how to allocate those costs to petitioner's activities and how to calculate the portion of those costs that must be capitalized.

## IV. Allocation of the Cigarette Tax Stamp Costs

### A. Allocation of Cigarette Tax Stamp Costs to Resale Activities

Section 263A(a)(1)(A) provides that "in the case of property which is inventory in the hands of the taxpayer", the taxpayer must include capitalizable direct and indirect costs in inventory costs. To calculate capitalizable costs, a taxpayer first must allocate the costs to various activities, such as production or

resale activities.  See sec. 1.263A-1(c)(1), Income Tax Regs.  Generally, resellers allocate costs to four categories:  (1) purchasing costs, see sec. 1.263A-3(c)(3), Income Tax Regs.; (2) handling costs, see sec. 1.263A-3(c)(4), Income Tax Regs.; (3) storage costs, see sec. 1.263A-3(c)(5), Income Tax Regs.; and (4) general and administrative costs relating to the three prior categories, see sec. 1.263A-3(c)(2), Income Tax Regs.

Costs attributable to purchasing, handling, and storage activities include "direct and indirect labor costs * * *; occupancy expenses * * *; materials and supplies; rent, maintenance, depreciation, and insurance of vehicles and equipment; tools; telephone;" and travel.  Sec. 1.263A-3(c)(2), Income Tax Regs. Handling costs are "costs attributable to processing, assembling, repackaging, transporting, and other similar activities with respect to property acquired for resale".  Sec. 1.263A-3(c)(4)(i), Income Tax Regs.  Processing costs are costs a reseller incurs in making minor changes to a product acquired for resale, such as monogramming or alterations.  See sec. 1.263A-3(c)(4)(ii), Income Tax Regs. Assembling costs are costs a reseller incurs in readying property for resale, such as attaching wheels to a bicycle.  See sec. 1.263A-3(c)(4)(iii), Income Tax Regs. Repackaging costs include costs a reseller incurs to package property for resale to customers.  See sec. 1.263A(c)(4)(iv), Income Tax Regs.

The parties' arguments regarding the proper allocation of the cigarette tax stamp costs are not entirely clear. In the notice of deficiency respondent determined that the cigarette tax stamp costs were general and administrative costs. However, on brief respondent contends that the cigarette tax stamp costs could be purchasing costs, handling costs, or general and administrative costs. Petitioner appears to contend that although the cigarette stamp tax costs are a general and administrative costs, they need not be capitalized because they cannot be allocated to purchasing, handling, or storage costs. While we agree that the cigarette tax stamp costs could be characterized as purchasing costs, handling costs, or general and administrative costs, for the reasons set forth below we find that the cigarette tax stamp costs are most appropriately classified as handling costs.

When a stamping agent affixes a cigarette tax stamp to a cigarette package, the stamping agent makes only a minor change to the product; however, New York law requires the stamping agent to make this change before sale. See N.Y. Tax Law sec. 471(2). Therefore, the cost of the cigarette tax stamps is a cost the reseller incurs to ready or package the cigarettes for resale. The costs related to purchasing and affixing the cigarette tax stamps are similar to the processing, assembling, and repackaging costs described in the regulations as handling costs.

While the handling activity related to the cigarette tax stamp differs from the specific examples in the regulations, the purchasing and affixing of the cigarette tax stamp is sufficiently similar to the handling activities in the examples to support a conclusion that the cigarette tax stamp cost is a handling cost under section 1.263A-3(c)(4), Income Tax Regs.  We so hold.

B.    Use of the Simplified Resale Method

1.    Allocation Methods

After a reseller has allocated costs to its various resale activities, the reseller must allocate costs to ending inventory.  A reseller subject to the UNICAP rules may use the facts-and-circumstances method, see sec. 1.263A-1(f), Income Tax Regs., or the simplified resale method, see sec. 1.263A-3(d), Income Tax Regs. Both methods enable the reseller to calculate the amount of costs that the reseller must capitalize under the UNICAP rules.

2.    The Commissioner's Use of the Simplified Resale Method

Section 446(b) vests the Commissioner with broad discretion to determine whether a particular method of accounting clearly reflects income.  See Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 788 (11th Cir. 1984); Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 370 (1995); RLC Indus. Co. v. Commissioner, 98 T.C. 457, 491 (1992), aff'd, 58 F.3d 413 (9th Cir.

1995). If a taxpayer fails to use a method of accounting that clearly reflects income, the Commissioner may reconstruct the taxpayer's income using any reasonable method that clearly reflects income. Sec. 446(b).

Petitioner's method of accounting for income and expenses, including inventory costs, did not apply the UNICAP rules. Therefore, respondent was entitled to reconstruct petitioner's income by any reasonable method that clearly reflected income. Because section 1.263A-3(d), Income Tax Regs., provides that resellers may use the simplified resale method to allocate costs, we find that respondent acted properly in using the simplified resale method to redetermine petitioner's income.

### 3. Application of the Simplified Resale Method

Section 1.263A-3(d)(3), Income Tax Regs., provides procedures for applying the simplified resale method. The simplified resale method uses several formulas to calculate the additional capitalizable costs for the taxable year. Id. The general formula is: "combined absorption ratio × section 471 costs remaining on hand at year end". Sec. 1.263A-3(d)(3)(i)(A), Income Tax Regs. The product of this formula is equal to the amount of additional capitalizable costs that the

taxpayer must add to its ending section 471 costs.[24] Sec. 1.263A-3(d)(3)(i)(B), Income Tax Regs. Once the taxpayer adds the additional capitalizable costs to its ending section 471 costs, the taxpayer calculates total ending inventory for the taxable year.[25]

The combined absorption ratio is the sum of the storage and handling costs absorption ratio and the purchasing costs absorption ratio.[26] See sec. 1.263A-3(d)(3)(i)(C)(1), Income Tax Regs. Section 1.263A-3(d)(3)(i)(D)(1), Income Tax

---

[24]Sec. 471 provides the general rule for inventories.

[25]Petitioner contends that in the notice of deficiency respondent erroneously calculated ending inventory as the product of: (1) the additional capitalizable costs as determined using the simplified resale method; (2) petitioner's purported sec. 471 costs for the year, see supra note 8; and (3) petitioner's ending inventory. In his spreadsheets AO Minervini did not include petitioner's sec. 471 costs for the year in calculating its ending inventory. Respondent briefly addressed petitioner's contention in his reply brief.

Neither party adequately explained his or its position regarding the correct application of the simplified resale method. As the parties failed to address this issue, we have confined our analysis to those issues material to the resolution of this case. We leave for the Rule 155 computation the proper application of the simplified resale method. If the parties are unable to reach an agreement, we will address the issue as appropriate in a Rule 155 proceeding or in a supplemental opinion.

[26]The parties stipulated the allocation of all costs except for the allocation of the cigarette tax stamp costs. Because our decision does not affect the purchasing cost absorption ratio, see sec. 1.263A-3(d)(3)(i)(E), Income Tax Regs., we do not address the calculation of that ratio.

Regs., provides that the storage and handling costs absorption ratio is determined as follows:

$$\frac{\text{Current year's storage and handling costs}}{\text{Beginning inventory plus current year's purchases}}$$

The current year's storage and handling costs include all storage costs and all handling costs incurred during the taxable year that relate to property the taxpayer acquired for resale. Sec. 1.263A-3(d)(3)(i)(D)(2), Income Tax Regs. The beginning inventory equals the section 471 costs of property the taxpayer acquired for resale that remain unsold as of the beginning of the taxable year. Id. The current year's purchases equal the section 471 costs of property the taxpayer acquired for resale during the taxable year. Id.

As noted supra p. 35, the cigarette tax stamp costs are handling costs. Petitioner must include the cigarette tax stamp costs incurred during the taxable year in the numerator[27] of the ratio as part of the current year's storage and

---

[27]Petitioner contends that the annual cigarette tax stamp cost should be included in both the numerator and denominator of the storage and handling costs absorption ratio. The denominator includes the sec. 471 costs from the prior taxable year as well as the current year's purchases. Although petitioner purchased cigarette tax stamps during the taxable year, the cigarette tax stamps are not included in the current year's purchases because the cigarette tax stamps are not part of petitioner's inventory. Rather, the cigarette tax stamps are indirect costs allocable to the handling of petitioner's inventory. Therefore, the cigarette tax stamp cost is included in the numerator only.

handling costs. Accordingly, we conclude that petitioner must include the current year's cigarette tax stamp costs in the numerator of the ratio.

V.    Conclusion

For purposes of determining eligibility for the small reseller exception, petitioner must include in gross receipts the entire sale proceeds from the sale of cigarettes, including the costs of the cigarette tax stamps. Petitioner failed to prove that it had average annual gross receipts of less than $10 million for the testing periods applicable to the relevant years, and therefore it is subject to the UNICAP rules of section 263A. The cigarette stamp tax costs are indirect costs properly characterized as handling costs. Respondent did not err in using the simplified resale method to determine the amount of costs properly allocable to petitioner's ending inventory under the UNICAP rules.

We have considered all remaining arguments made by the parties[28] for results contrary to those expressed herein, and to the extent not discussed above, we reject those arguments as irrelevant, moot, or without merit.

------

[28]In its brief petitioner also contends that respondent failed to apply its 2005 overpayment to an appropriate taxable year. As we understand petitioner's argument, it is claiming that the overpayment for 2005 has not been applied to reduce its income tax liability for another year. Petitioner's argument raises a computational issue only, and we need not resolve it here. The impact of the 2005 overpayment on the calculation of the 2004 and 2006 deficiencies, if any, will be considered in the Rule 155 process.

To reflect the foregoing,

Decision will be entered

under Rule 155.